11 CIV. 4791

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### MANHATTAN DIVISION

| | | |
|---|---|---|
| Paul Thayil, | § | Case No. _____ |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **COMPLAINT** |
| | § | |
| | § | |
| | § | **Violation of Copyright; Theft and** |
| **FOX Corporation;** | § | **Violation of Copyright; Theft and** |
| **Simon Cowell;** | § | **Illegal Use of Trade Secret** |
| **EMI Music Publishing Company;** | § | **Intellectual Property; RICO** |
| **SONY Music Entertainment;** | § | |
| **Simon Fuller;** | § | **Jury Trial Demanded** |
| **19 Entertainment;** | § | |
| **CKX, Inc.;** | § | |
| **Nigel Lythgoe; and** | § | |
| **NBC Universal,** | § | |
| | § | |
| **Defendants.** | § | |

NOW COMES Paul Thayil, Plaintiff, to file this Complaint and would show the Court the following, to wit:

## I. JURISDICTION

1.) This action is brought pursuant to Title 28 U.S.C. § 1331; Title 28 U.S.C. § 1332, State Law Claims under Title 28 U.S.C. § 1367 and RICO Statutes.

## II. PARTIES

2.) Plaintiff in this case is Paul Thayil, who is a resident of Pulaski County, Arkansas, whose address is 100 Park Drive, Apt. 728, Maumalle, Arkansas 72113.

3.) Defendant FOX Corporation is domiciled in New York County, New York, whose agent may be served at 1211 Avenue of the Americas, New York, New York 10036.

1

4.) Defendant Simon Cowell is a resident of New York County, New York, whose address is 550 Madison Avenue, New York, New York 10022.

5.) Defendant EMI Music Publishing Company is domiciled in New York County, New York, whose agent may be served at 75 Ninth Avenue, 4th Floor, New York, New York 10011.

6.) Defendant SONY Music Entertainment is domiciled in New York County, New York whose agent may be served at 550 Madison Avenue, New York, New York 10022.

7.) Defendant Simon Fuller is a resident of New York County, New York, whose address is 595 Madison Avenue, 8th Floor, New York, New York 10022.

8.) Defendant 19 Entertainment is domiciled in New York County, New York whose agent may be served at.  595 Madison Avenue, 8th Floor, New York, New York 10022.

9.) Defendant CKX, Inc. is domiciled in New York County, New York whose agent may be served at 650 Madison Avenue, 16th Floor, New York, New York 10022.

10.)  Defendant Nigel Lythgoe is a resident of New York County, New York, whose address is 595 Madison Avenue, 8th Floor, New York, New York 10022.

11.)  Defendant NBC Universal is a resident of New York County, New York, whose agent may be served at 31 Rockefeller Plaza, 1428 W, New York, New York 10020.

### III. STATEMENT OF THE CASE

12.)  The Plaintiff is the creator and owner of a certain intellectual property created in the United States and Australia.  This intellectual property was reduced to written form by producing a document known as a "Marketing Plan" (see Exhibit "A") by the creator and owner.  At all times, the Plaintiff considered his intellectual product to be a trade secret and copyrighted.  The said Marketing Plan was provided to the Defendants as a trade

secret for their evaluation and possible participation in a business venture with the Plaintiff. It was understood and implied that said Marketing Plan would be kept secret, confidential and proprietary with no rights conveyed to Defendants for copying, duplication or use in any manner at any time.

13.) From its inception, the Plaintiff travelled to the United States under the advisement of the Australian Attorney General. (See Exhibit "B".)

14.) An automatic copyright of the Marketing Plan followed Plaintiff to the United States as Australian law sets out and establishes. The Plaintiff took immediate ownership of the copyright as soon as Plaintiff committed the marketing plan to fixed form which is protected by U.S. law.

15.) In addition to owning the copyright, Plaintiff residing and being an Australian citizen, contacted the United States Consulate General in Australia regarding the particular aforementioned copyrighted business plan received by the United States Consulate General on September 27, 2000. (See Exhibit "C".)

16.) ***History***

Defendants directly received Plaintiff's Marketing Plan through Australia SONY and indirectly through EMI Music London in the year 1997. Plaintiff hand-delivered his Marketing Plan to EMI Music London on the 10th day of April 1997 with the aim of possible partnership. In February of 1997, Plaintiff handed his Marketing Plan to Herald-Sun Newspapers in Melbourne, Australia, which is a part of Fox Corporation. Cameron Adams from Herald-Sun Newspapers sent Plaintiff's Marketing Plan to the SONY Music Melbourne, Australia office with the aim of possible partnership or sponsorship. This chain of forwarding and responding, etc. provides the links and the paper trail to prove

3

such.   Several weeks after SONY Music Melbourne Australia received Plaintiff's Marketing Plan, SONY Music returned Plaintiff's Marketing Plan stating that they were not interested.   The Defendants, without any authorization or permission from Plaintiff, then converted the trade secret intellectual and copyrighted property contained in Plaintiff's Marketing Plan for their own use and implementation by fraud, misappropriation, trickery, deception and theft in bad faith with no compensation offered or paid to Plaintiff.   With no coincidence, all of Plaintiff's said TV shows from the Marketing Plan were created after April 10, 1997.

17.)  Additionally, the Plaintiff declares and considers the intellectual property in the said Marketing Plan to have U.S. and international common-law copyright with full rights retained under State, Federal and International Law.

## IV.  STATEMENT OF THE FACTS

18.)  The Defendants received a copy of the Marketing Plan either directly, indirectly or inadvertently from the Plaintiff.   The Defendants used the ideas, data, information, direction and strategy outlined in the said Marketing Plan to develop, produce and broadcast four (4) television shows in the United States, Australia and Britain.   The four (4) television shows contained in Plaintiff's Marketing Plan that were shared with Defendants in early 1997 were entitled –

          a.) American Idol

          b.) Dancing with the Stars

          c.) So You Think You Can Dance

          d.) America's Got Talent

19.) Aspects from Plaintiff's Marketing Plan in use by Defendants –

a.) Simon Cowell arrived in New York after Plaintiff's arrival from Australia and attended as many investors' meetings as Plaintiff attended to generate funds for the shows, following Plaintiff's Marketing Plan to every point.  Similarly, Simon Cowell arrived from London, England after the Plaintiff's arrival from Australia, and attended as many investors' meetings to generate partnerships and funds for the Plaintiff's copyrighted shows.

b.) Next, Simon Cowell arrived in the United States to begin to choose judges for his show in 1997, again another aspect contained in Plaintiff's business plan.

c.)  Creation of a centre stage in New York to link Hollywood and Los Angeles was a concept contained in Plaintiff's marketing plan to sign artists to SONY/BMG, 19 Entertainment, CKX Inc., and EMI Music, all Defendants to this case, was again another aspect contained in Plaintiff's business plan.

d.)  Just as in Plaintiff's Marketing Plan, Defendants invited musicians to take part in their television shows.

e.)  Plaintiff's Marketing Plan covered the world idea for the world idol.

f.)  Defendants began to link with other major companies in the USA, an idea which Plaintiff shared in his Marketing Plan.

g.)  One of the highlights of each American Idol show stated by Plaintiff was when the musician says on-camera that he is going to Hollywood or that he is not going to Hollywood from where the audition takes place.

h.)   Defendants encouraged musicians to travel between cities.

i.)   Defendants encouraged TV show participants to reach the top, known as the top twelve (12).

j.) Defendants chose music for musicians to perform.

k.) Simon Cowell stated in an interview with Anderson Cooper on 60 Minutes in March 2007 that the underlying primary purpose of the idol franchise was for 19 Entertainment to discover new singing talent that can be signed to the recording agreements that the corporation maintains with a major record company called SONY/BMG and benefit from the record sales of contestants and winners who are exposed to the worldwide marketplace through the TV shows.  This is the Marketing Plan's documented underlying primary purpose from the Plaintiff's Musicflow, LLC in 1997.

l.) In addition, over forty-five (45) other detailed matches to Plaintiff's Marketing Plan were implemented by Defendants.

20.) When a work written by an Australian is copied in Australia, clearly Australian law applies.  Through a web of multilateral and bilateral treaties, copyright protection in certain foreign countries is guaranteed to meet established international standards.  Under these treaties, the works of Australian creators are protected in certain countries according to the law of that country.  Australia is a party to a number of international treaties that protect copyright material.  These include the Berne Convention for the Protection of Literary and Artistic Works (Berne Convention) and the Universal Copyright Convention (UCC) both of which the United States participates.  These international treaties ensure that most foreign copyright works are protected in Australia under Australian copyright legislation and Australian copyright owners are protected in most other countries under the equivalent law of that country.  Again, the United States participates in these international treaties.

21.) The Berne Convention was concluded in 1886, and now has over 100 member countries. It aims to protect the rights of authors by providing certain established standards of protection for their works. Two major international principles underlying the Berne Convention are:

- the principle of national treatment; and
- the principle of automatic protection.

The principle of national treatment allows the courts of a country to apply their national law to acts that occur within that country, rather than a foreign law. Decisions are therefore more likely to be soundly based, since judges will apply a law with which they are familiar.

22.) Under the principle of automatic protection, a work will be granted protection even if it fails to satisfy formalies, such as registration or legal deposit, under the national law of a member country. Copyright protection is automatic in Australia, where the material generated from in this case, for published and unpublished works. There is no need to register copyright; however, in this case, Plaintiff did register his copyworks in Australia.

23.) The Berne Convention covers a wide range of works including books, pamphlets and other writings, lectures, dramatic works and illustrations. Translations, adaptations, arrangements and collections are also protected. Generally, works are protected for 70 years after the author's death.

24.) The UCC was concluded in 1952 under the auspices of the United Nations Education, Science and Cultural Organization (UNESCO) in an attempt to incorporate a greater number of countries into the international copyright community. The UCC embodies that principle of national treatment. Artistic works are included in the

7

protection granted by the UCC. Generally, works will be protected for a minimum of 25 years beyond the life of the author. The UCC requires member countries to provide minimum rights to rights holders.

## V. COMPLAINT

25.) All of the allegations listed in the Statement of the Case and Statement of Facts are incorporated in the following counts of the Complaint.

## COUNT I

26.) The Defendants without permission or authorization from Plaintiff stole and used the Marketing Plan to produce and broadcast their own television shows.

## COUNT II

27.) The Defendants have not given the Plaintiff any recognition, remuneration or consideration for using said trade secret intellectual property at any time, only returned the documented material in some cases to Plaintiff.

## COUNT III

28.) All of the Defendants jointly and severally have conspired to unfairly and in bad faith illegally take and deprive said property from Plaintiff.

## COUNT IV

29.) The Defendants being two or more persons conspired for the purpose of depriving, directly or indirectly, the Plaintiff of his equal protection of the laws and rights to his property.

30.) The Defendant conspirators were motivated, did or caused to be accomplished, the acts outlined in this Original Complaint in furtherance of the conspiracy to violate Plaintiff's right to free exercise of rights.

8

## COUNT V

31.) The Defendants entered into agreements to carry out the scheme of an enterprise through a pattern of racketeering activity to defraud the Plaintiff as outlined in Counts 1 through 4 and 6 by use of the mails or wires in violation of Title 18 U.S.C. §§ 1341 and 1343. The Defendants devised or intended to devise a scheme to defraud or obtain money or property by means of false or fraudulent pretenses, representations or promises for the purpose of executing the scheme or artifice or attempting to do so by utilizing the U.S. Mail, private or commercial interstate carriers, telephone, fax, email or other methods. The Defendants also criminally violated Title 18 U.S.C. §§ 2314 and 2315 by willfully, knowingly and unlawfully causing the transport and receipt of stolen goods. These RICO acts are all in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) under Title 18 U.S.C. §§ 1961-68 (1994) or more specifically Title 18 U.S.C. §§ 1962 (c) and (d). These RICO acts began occurring more than one (1) year in the past.

## COUNT VI

32.) The Defendants have violated the Lanham Act, 15 U.S.C. 1126; Copyright Act, 17 U.S.C. § 101, et seq.; and committed fraud, breach of fiduciary duty, conversion, misappropriation of trade secrets against Plaintiff which has caused an unjust enrichment for the Defendants.

## COUNT VII

33.) The Defendants committed copyright infringement. The Defendants used the copyrighted material without permission. This is an offense under the Copyright Act.

**REQUEST FOR TEMPORARY AND PERMANENT INJUNCTION**

34.) The Plaintiff is entitled to an immediate temporary injunction due to the continuing abuse, actions and violations of substantial rights caused by the Defendants. It is certain that irreparable and irreversible harm will result if this Court does not issue a temporary injunction and finally, a permanent injunction. The Plaintiff will prevail on these claims and the Defendants cannot prevail due to the overwhelming legal grounds and evidence against them in this case.

**CONCLUSION**

35.) Therefore, due to the severe discrimination, harassment, intimidation and illegal overt acts against the Plaintiff, he has endured and suffered great harm in legal costs, in loss and expenditure of vast amounts of his professional time, in much less income, loss of business and association opportunity, loss of reputation, loss of liberty and property, loss of due process of law and equal protection of the law.

**DAMAGES**

36.) The Plaintiff asks this Court for a judgment in his favor and actual damages of Two Million Eight Hundred Thousand Dollars ($2,800,000.00) from each Defendant. The Plaintiff also asks for Eight Million Eight Hundred Thousand Dollars ($8,800,000.00) in punitive damages from each Defendant. In addition, the Plaintiff asks for rightful royalty payments in arrears and future as the creator and owner of certain intellectual property, trade secret and copyrighted property in use and created in the United States and Australia. The Plaintiff does not seek damages solely from individual funds of the Defendants.

37.)   Due to the fact that the Defendants may be unable or unwilling to pay for said damages in cash, Plaintiff demands that any and all personal and real assets be the subject matter for damages, which would include, but is not limited to, any and all real property, stocks, bonds, vehicles, certificates of deposits, money market accounts, equipment, furniture, jewelry, boats, sporting equipment, interests in television shows, etc. Therefore, the Defendants' real and personal properties should be subject to a Notice of Lis Pendens prohibiting the sale or disposition of this cause of action.

Respectively submitted,


Paul Thayil, Pro se
100 Park Dr., Apt. 728
Maumalle, AR 72113
(417) 619-1792




**VERIFICATION**

IT IS HEREBY Verified that under the penalties of perjury that the foregoing Complaint is true and correct to the best of my knowledge and belief.

Witness my hand and seal this _7th_ day of July, 2011.


Paul Thayil

EXHIBIT A.

# www.musicflow.net
## 13th June 2000



**Re: Sponsorship and Joint promotion.**

Dear Director,

Let me take this opportunity to present to you a new "round the world" music concept titled "MusicFlow". Musicflow is the linking of 7 major international cities, and stages, for musicians and artists(print)to be able to demonstrate their talents. The cities involved are New York, London, Chicago, Los Angeles, New Delhi, Singapore and Melbourne. Musicians will travel to each of these cities and their stages for a major concert. The Melbourne team would like to offer your organisation advertising opportunity with Musicflow.

Our promotion strategy is as follows:

1. Large quantites of glossy car stickers will be produced for distribution around the world. All musicians involved in the programme will promote Musicflow throughout the world.

2. Cars carrying large flags with the words www.musicflow.net and "Search Musicflow" with internet website address will be driven through the 7 major cities. Glossy stickers will be distributed in towns between Chicago, New York and Toronto. We will distribute in schools and colleges teaching music and place the stickers in major music stores so that a child from the age of 6 years to the oldest member in the community can take part in Musicflow. I will be driving from New York to Chicago myself in July and August with a large Musicflow flag attached to my car.

Please let me know if you are interested in placing your company logo on the flags and stickers because your early response will maximise the returns from this initial thrust. I have attached a sheet detailing a typical Musicflow programme.

Out of Musicflow we have created a second concept titled "ShyDancer". This gives companies another round the world opportunity to advertise. I have attached the sheet detailing the concept. We will include your company logo in the filming of the ShyDancer in their home. This gives a very personal touch to advertising your company.

Suggestions for sponsorships include:

* Cash donations.
* Airline tickets.
* Free car hire from car rental companies.
* Discounted Travel Insurance
* Discounted accommodation for musicians.
* Supply of Stage equipment.
* Supply of Musical Instruments and Electronic equipment.
* Discounted tickets to sightseeing venues.
* Supply of videotapes.

In return for your kind sponsorship, Musicflow will:

* Establish links from our website to your website.
* Place your company logo(to be supplied by your organisation) on the Musicflow Website and promotional Materials(eg flags).
* Display your company logo on the ShyDancer video clip.

I hope that you will carefully consider these two forms of advertising for your firm "round the world" through MusicFlow.

Our Melbourne team will look forward to your response.
Sincerely,

Paul Thayil
Director-MusicFlow

Email for USA: **musicflow1@yahoo.com**
Contact: **Chicago 1-630-653 9204**

# www.musicflow.net



**Re: Sponsorship/Advertising**

Dear Marketing Director,

Let me take this opportunity to present to you a new round the world
music concept titled "MusicFlow". Musicflow is the linking of 8 major
International cities, and stages, for musicians and artists(print) to
be able to demonstrate their talents. Musicflow is a concept about
music and musicians in this world. It will encourage all kinds of
music. Musicflow is to become "An apple of a musicians eye". My aim in
life is to make Musicflow a "Household name". I have dedicated the rest
of my living days to make this concept become a reality, thanks to my
International music friends round the world.

The cities involved are New York, London, Chicago, San Franceso, Los
Angeles New Delhi, Singapore and Brisbane. Musicians will travel to
each of these cities and their stages for a major concert. Also visit
the special cafe called "Cafe Communication" round the world.

Our promotion strategy is as follows:
1. Large quantities of glossy car stickers will be produced for
distribution around the world. All musicians involved in the program
will promote Musicflow throughout the world. Musicians will be
encouraged to do Musicflow once in their life time.

2. Cars carrying large flags with the with internet website address
will be driven through the 8 major cities. We will distribute MF
stickers in schools and colleges teaching music and also in major music
stores so that a child from the age of 6 years to the oldest member in
the community can take part in Musicflow.

3. We will have many Musicflow catalogues as listed in the attached
front sheet which provide advertising opportunities.

www.musicflow.net



## To all Musicians and Artists:

How RTW(Round the world) **Musicflow** will work:

1. Musicians will arrive on a 767 **Musicflow** aircraft at
   a) LAX, Los Angeles
   b) JFK, New York
   c) Chicago, O'Hare International
   d) Heathrow, London
   e) Gandhi International, New Delhi
   f) Changi International, Singapore
   g) Tullamarine, Melbourne.

2. Pick-up a **Musicflow** rental, Limo or Car/regular
   or Bus service

3. Arrive at a **Musicflow** Motel, Hotel, Hostel or Home.

4. Arrive at **Musicflow** Centre Stage.

5. Perform at a **Musicflow** Concert.

6. Attend a **Musicflow** Surprise Party after the Concert.

7. Attend a filming session of each Band or Artist which will be filmed by <u>Musicflow</u> film Director.  Radio interviews etc.,

8. Be given the opportunity to place their CD on <u>Musicflow Top 7</u> CD stand at the 5th Avenue New York City and Oxford Street, London HMV music stores.

9. <u>Musicflow</u> Print Artists display your work at the entrance of concert halls in each city round the world.

10. Return home to play at <u>Musicflow</u> final home concert.

11. Sightseeing tour by <u>Musicflow</u> while waiting for the night concert.

12. Record <u>"ShyDancer"</u> by <u>Musicflow</u> film Director.

13. Visit a <u>Musicflow</u> Musical Instrument shop.

14. All musicians covered by <u>Musicflow</u> Travel Insurance.

15. Be introduced to Musicflow food/art products produced by Australian Country Producers.

**Presented by Melbourne Musicflow Team.**

Copyright 1994.

# New Dance Concept by Musicflow



Title of Concept **"ShyDancer"**

## What does ShyDancer really mean for you?
*Taking the Shyness out of the Dancer*

**What Sony Music is to the CD Music Industry,
ShyDancer is to Dance/Video Industry.**

This concept is open for all keen shydancers, people who love to dance but are shy in this world. MusicFlow will film any person willing to aim for the "Top Ten ShyDancers". Please note the aim is to make you dance in the most private room in your home (example Bedroom or Kitchen) so that you can dance with every bone and muscle in your body without any inhibitions or intimidation. We believe this way you will produce the most powerful dance expression from your Deepest Soul Moves. We will offer a selection of top dance music that you can choose. Your soul aim will be to dance your heart out in front of the MusicFlow cameras. There will be a production cost which will be covered by sponsorships.

The tape will go into a pool to be selected for a half hour TV Show. It will also be listed for a selection as "Top Ten ShyDancers". The top ten tapes will then be placed for sale at the 5th Ave New York City HMV store and the Oxford Street London HMV music store under the stand ShyDancer by Musicflow. If your dance hits the charts MusicFlow will give you a percentage of the profits as arranged during the film session.
ShyDancers can be anything from one dancer to three dancers.

Please note since MusicFlow is a concept run by highly respected musicians round the world. We will not allow any nude filming or vision which is unacceptable to general public standards. We will take action against any film producer who encourages this form of ShyDancer. Since ShyDancer is a registered trade all film producers will need to obtain a licence to film ShyDancer through the MusicFlow website as mentioned below.

Sincerely,

Paul Thayil
Director of "ShyDancer"
Copyright@ May 14th 2000.

*All communications by email thanks:*
**musicflow1@yahoo.com**

www.musicflow.net

# 3M Target Million Dollars from Manhattan for Musicflow

## *Spurring Musicians/Artists Round the World.*

### USA Team:
John Thayil from Central Chicago
Mr. & Mrs. S Salin from New York City
Royston Thomas Brooklyn New York
Rev. Anand Veeraraj from New Jersey

### England Team:
Mike Isemike from South London
Neil Sheermen from East London

### South East Asia Team:
Ravi Authur  from India
Jeremy Montario  from Singapore

### Australian Team:
Paul Thayil  Concept Director from Melbourne
Mr. Tommy Smith( Top Jazz Guitarist
& Senior Airline Staff member)
Laszlo Dudas(Film/Video Producer)
Greg Carrick(Webmaster/Publicity Manager).

USA contact: **Email   jot123@juno.com**

Tele: **1-630-653 9204**

# MCM Target
# Million Dollars *from*
# Chicago *for*
# Musicflow

## *Spurring Musicians/Artists*
## *Round the World.*

### USA Team:
John Thayil from Chicago
Salin & Shirley Varghese
Royston Thomas Brooklyn New York City

### England Team:
Mike Isemike from South London
Neil Sheerman from East London

### South East Asia Team:
Ravi Authur from India
Jeremy Montario from Singapore

### Australian Team:
Paul Thayil  Concept Director from Melbourne
Mr. Tommy Smith(Top Jazz Guitarist
& Senior Airline Staff member)
Laszlo Dudas (Film/Video Producer)
Greg Carrick(Webmaster/Publicity Manager).

USA Email: **musicflow1@yahoo.com**

EXHIBIT B.

# ATTORNEY-GENERAL
### THE HON PHILIP RUDDOCK MP

**1 5 MAR 2007**

06/9015, MC07/440

Mr Paul Thayil
c/o Mr Tom Smith
136 Elder Street
SOUTH CLARINDA  VIC  3169

Dear Mr Thayil

Thank you for your letter of 1 December 2006 regarding your concern that your music concept was copied by the maker of certain television programs, principally in the United States.

It is not possible for me to intervene in this potential legal dispute.  You will need to seek professional legal advice concerning your claim.  Proceedings concerning claims of infringement of concepts for a television program are common but are also often complex. You should consider seeking advice from United States lawyers if you are considering pursuing your claim in that country.

I am also sending a copy of this letter to your United States address.

Yours sincerely

Philip Ruddock

EXHIBIT C.

## Attached is the copy from the original document:

In 2000, I asked the United States Government for permission to bring my marketing plan of a TV show for musicians and dancers to the U.S.


The United States Government answered:

We have a trade agreement with Australia; therefore, it is okay to go ahead.

Musicflow
Director
Paul Thayil
53 Maygrove Way
Mulgrave 3170

Consulate-General of the
United States of America
Level 59, MLC Centre
19-29 Martin Place,
Sydney, NSW 2000.

20th Sept 2000.

Dear Sir/Madam,

I am an Australian Citizen.  This letter is to mainly ask you about immigration
rules for Australians working in America.
As an Australian what am I allowed to do in the USA and what am I not allowed
to do specially in relation to the information I have provided in regards a music concept titled
Musicflow?
Since America is the leading music country in the world I may have to move to
the States and work from there.  Could you please tell me what options do I have
so that I don't break any US immigration laws.  Refer to Attachs
Is there such thing as a business licence? if so what are the costs?   ?
Can I keep my Australian citizenship and earn money in the USA?  Yes
Please note I would like to see any money earned through Musicflow in USA to remain in
the USA.

I will appreciate your help regarding this matter.

Sincerely,

Paul Thayil
Director-Musicflow
www.musicflow.net

PAUL THAYER
DIRECTOR
MUSIC-ROW
53 MAYGROVE WAY
MULGRAVE   VIC 3170

IV

 **VISA WAIVER PILOT PROGRAM**

Travelers to the United States (including Australians) do not need visas under the visa waiver program. To qualify for visa-free entry, travelers must be a citizen of one of the following countries:

**Andorra, Argentina, Australia, Austria, Belgium, Brunei, Denmark, Finland, France, Germany, Iceland, Ireland, Italy, Japan, Liechtenstein, Luxembourg, Monaco, New Zealand, Norway, Portugal, San Marino, Singapore, Slovenia, Spain, Sweden, Switzerland, the Netherlands, the United Kingdom, and Uruguay.**

**In addition to be being a citizen of one of the above countries, the travelers must be:**

- traveling on an unexpired national or EC passport;
- traveling for business or pleasure only;
- staying in the US for 90 days or less.

**Plus, if entering the US by air or sea:**

- holding a return or onward ticket;
- entering the US aboard an air or sea carrier that has signed an agreement with the US Immigration and Naturalization Service to participate in the visa-waiver program; and
- in possession of a completed form I-94W, obtainable from airline or shipping companies.

**Or, if entering the US by land from Canada or Mexico:**

- in possession of a completed form I-94W, issued by the immigration authorities at the border port of entry.

**Some Travelers are not eligible by law to enter the United States.** These include people with certain serious communicable illnesses, criminal records (particularly those involved with drugs), previous deportations from the US, certain visa refusals and other problems with US immigration laws or visas. Such travelers may apply for specially annotated visas; but they may not use the visa waiver program. If they attempt to travel visa-free, they will be refused entry into the United States.

**Visa-free entry does not include those who plan to study, work or remain in the US more than 90 days.** Those travelers need visas. If a US Immigration Officer believes that a visa-free traveler is going to study or work or stay longer 90 days, the officer will refuse to admit the traveler. No appeal is possible.

**Travelers who use the visa waiver program cannot extend their stay beyond 90 days, and they cannot change their visa status.**

Individuals who plan to enter the US on non-commercial flights, private planes or private yachts require visas.

**For visa applications and information faxed or mailed to you, call 1902-941-641. Charges apply.**

**Visa application forms and more information are available from our website at
http://www.usconsydney.org.**

(Syd 9/11/99)  a:/waiv.doc