**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| PAUL THAYIL,<br><br>                    Plaintiff,<br><br>      - against -<br><br>FOX CORPORATION;<br>SIMON COWELL;<br>EMI MUSIC PUBLISHING COMPANY;<br>SONY MUSIC ENTERTAINMENT;<br>SIMON FULLER;<br>19 ENTERTAINMENT;<br>CKX, INC.;<br>NIGEL LYTHGOE; AND<br>NBC UNIVERSAL,<br><br>                    Defendants. | **11-cv-04791 (SAS)**<br><br>**ECF Case** |

<u>**MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE**</u>
<u>**TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**</u>
<u>**AND MOTION TO STRIKE**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

I.     INTRODUCTION .......................................................................................... 1

II.    ARGUMENT ................................................................................................. 3

       A.    Standards for Dismissal ...................................................................... 3

       B.    Plaintiff Has Not Pled Any of the Required Elements of a Copyright Infringement
             Claim .................................................................................................... 4

             1.    Plaintiff Failed to Plead Ownership of a Valid Copyright ......................... 4

             2.    Plaintiff Failed to Allege Facts Establishing Infringement ....................... 6

       C.    Plaintiff's Trade Secret and Lanham Act Claims Fail Because He Has Not
             Alleged the Existence of a Trade Secret or Trademark, Much Less
             Misappropriation or Infringement by Any Defendant ......................................... 11

       D.    Plaintiff's Tort Claims (Counts I, II, III, IV and VI) Fail Because Plaintiff Has
             Not Alleged Facts Establishing the Elements of Those Claims, and Many of
             Those Claims are Preempted by the Copyright Act............................................. 14

             1.    Fraud ............................................................................................. 14

             2.    Conversion .................................................................................... 15

             3.    Failure to Attribute ....................................................................... 15

             4.    Conspiracy .................................................................................... 16

             5.    Equal Protection ........................................................................... 16

             6.    Breach of Fiduciary Duty............................................................. 16
             7.    RICO ............................................................................................. 17

       E.    Plaintiff has Failed to Properly Plead the Elements for Injunctive Relief ........... 19

       F.    Plaintiff Is Not Entitled To Recover Punitive Damages As a Matter of Law, and
             Plaintiff's Reference to Punitive Damages Must Be Stricken .............................. 21

III.   CONCLUSION ............................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anacomp, Inc. v. Shell Knob Servs., Inc.,*
No. 93 Civ. 4003, 1994 WL 9681 (S.D.N.Y. Jan. 10, 1994)....................................12

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)............................................................................................3

*Barclays Capital Inc. v. Theflyonthewall.com,*
No. 10-1372-cv, 2011 WL 2437554 (2d Cir. June 20, 2011)................................15

*Barrett v. Freifeld,*
64 A.D.3d 736, 883 N.Y.S.2d 305 (2d Dep't 2009)..............................................16

*Baskerville v. Blot,*
224 F. Supp. 2d 723 (S.D.N.Y. 2002)......................................................................3

*Bill Diodato Photography, LLC v. Kate Spade, LLC,*
388 F. Supp. 2d 382 (S.D.N.Y. 2005)......................................................................9

*Blue Tree Hotels Inv. v. Starwood Hotels & Resorts Inc.,*
369 F.3d 212 (2d Cir. 2004)....................................................................................4

*Burck v. Mars, Inc.,*
571 F. Supp. 2d 446 (S.D.N.Y. 2008)....................................................................22

*Bureerong v. Uvawas,*
922 F. Supp. 1450 (C.D. Cal. 1996)......................................................................22

*Colavito v. N.Y. Organ Donor Network, Inc.,*
8 N.Y.3d 43, 860 N.E.2d 713 (N.Y. 2006)............................................................15

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)................................................................................................13

*Davis v. The Gap, Inc.,*
246 F.3d 152 (2d Cir. 2001)..................................................................................22

*DeFalco v. Bernas,*
244 F.3d 286 (2d Cir. 2001)..................................................................................17

*DiTocco v. Riordan,*
No. 10 Civ. 4186, 2011 WL 4373943 (S.D.N.Y. Sept. 20, 2011)........................10

*DoubleClick Inc. v. Henderson*,
   No. 116914/97, 1997 WL 731413 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 7, 1997) .................12, 13

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*,
   633 F. Supp. 2d 159 (S.D.N.Y. 2009)..............................................................................21, 22

*Global Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006).................................................................................................4

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
   449 F.3d 377 (2d Cir. 2006)...............................................................................................11

*Gottwald v. Jones*,
   No. 11 Civ. 1432, 2011 WL 4344038 (S.D.N.Y. Sept. 12, 2011) .......................................4, 9

*Granger v. Gill Abstract Corp.*,
   566 F. Supp. 2d 323 (S.D.N.Y. 2008)................................................................................22

*Great Importations, Inc. v. Caffco Intern., Inc.*,
   No. 95 Civ. 0514, 1997 WL 414111 (S.D.N.Y. July 24, 1997) .............................................10

*Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*,
   No. 11 Civ. 3130, 2011 WL 4031203 (S.D.N.Y. Sept. 12, 2011) .........................................16

*Grosso v. Radice*,
   No. 07-cv-3620, 2009 WL 749906 (E.D.N.Y Mar. 16, 2009).................................................18

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999)....................................................................................................7

*Hays v. Sony Corp. of Am.*,
   847 F.2d 412 (7th Cir. 1988) ..............................................................................................22

*IDT Corp. v. Morgan Stanley Dean Witter & Co.*,
   12 N.Y.3d 132, 907 N.E.2d 268 (2009)................................................................................18

*In re Northwest Airlines Corp.*,
   349 B.R. 338 (S.D.N.Y. 2006)..............................................................................................21

*John Wiley & Sons, Inc. v. Glass*,
   No. 10 Civ. 598, 2010 WL 1848226 (S.D.N.Y. May 7, 2010).................................................21

*Jorgensen v. Epic/Song Records*,
   351 F.3d 46 (2d Cir. 2003).................................................................................................7, 8

*JSG Trading Corp. v. Tray–Wrap, Inc.*,
   917 F.2d 75 (2d Cir. 1990)...................................................................................................19

*LaChapelle v. Fenty,*
   No. 11 Civ. 945, 2011 WL 2947007 (S.D.N.Y. July 20, 2011) ...........................................5

*Lehman v. Dow Jones & Co.,*
   783 F.2d 285 (2d Cir. 1986).................................................................................................12

*Lerner v. Fleet Bank, N.A.,*
   459 F.3d 276 (2d Cir. 2006).................................................................................................14

*Logicom Inclusive, Inc. v. W.P. Stewart & Co.,*
   No. 04 Civ. 0604, 2004 WL 1781009 (S.D.N.Y. Aug. 10, 2004) .........................................15

*Martinez v. Ketchum Adver. Co.,*
   865 F. Supp. 166 (S.D.N.Y. 1994)........................................................................................22

*Mazurek v. Armstrong,*
   520 U.S. 968 (1997)..............................................................................................................19

*Miller v. Holtzbrinck Publishers, LLC,*
   377 Fed. Appx. 72 (2d Cir. 2010).........................................................................................15

*Mirvish v. Mott,*
   75 A.D. 269, 901 N.Y.S.2d 603 (1st Dep't 2010) .................................................................18

*Muller v. Twentieth Century Fox Film Corp.,*
   No. 08 Civ. 2550, 2011 WL 1330632 (S.D.N.Y. Mar. 30, 2011) ...............................8, 9, 10

*MyWebGrocer, LLC v. Hometown Info, Inc.,*
   375 F.3d 190 (2d Cir. 2004).................................................................................................19

*Ozbakir v. Scotti,*
   764 F. Supp. 2d 556 (W.D.N.Y. 2011) .................................................................................17

*P & G v. Ultreo, Inc.,*
   574 F. Supp. 2d 339 (S.D.N.Y. 2008)...................................................................................19

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.,*
   602 F.3d 57 (2d Cir. 2010)...............................................................................................9, 10

*Pyatt v. Raymond,*
   No. 10 Civ. 8764, 2011 WL 2078531 (S.D.N.Y. May 19, 2011)......................................9, 21

*Q-Co Industries, Inc. v. Hoffman,*
   625 F. Supp. 608 (S.D.N.Y. 1985)........................................................................................12

*Reece v. Marc Ecko Unltd.,*
   No. 10 Civ. 02901, 2011 WL 4112071 (S.D.N.Y. Aug. 19, 2011) .........................................7

*Reed Elsevier, Inc. v. Muchnick,*
   130 S. Ct. 1237 (2010) ................................................................................5

*Reuters, Ltd. v. United Press Int'l, Inc.,*
   903 F.2d 904 (2d Cir. 1990) ....................................................................20

*Rex Med. L.P. v. Angiotech Pharms. Inc.,*
   754 F. Supp. 2d 616 (S.D.N.Y. 2010) .....................................................20

*S.C. Johnson & Son, Inc. v. Clorox Co.,*
   241 F.3d 232 (2d Cir. 2001) ....................................................................19

*S.Q.K.F.C., Inc. v. Bell Atlandtic Tricon Leasing Corp.,*
   84 F.3d 629, 633 (2d Cir. 1996) .............................................................17

*Salinger v. Colting,*
   607 F.3d 68 (2d Cir. 2010) ................................................................19, 20

*Schlaifer Nance & Co. v. Estate of Warhol,*
   119 F.3d 91 (2d Cir. 1997) ......................................................................14

*Schroedel v. New York Univ. Med. Ctr.*
   885 F. Supp. 594 (S.D.N.Y. 1995) ..........................................................19

*Shields v. Citytrust Bancorp., Inc.,*
   25 F.3d 1124 (2d Cir. 1994) ....................................................................14

*Silberstein v. Fox Entm't Group, Inc.,*
   424 F. Supp. 2d 616 (S.D.N.Y. 2004) .......................................................7

*Sira v. Morton,*
   380 F.3d 57 (2d Cir. 2004) .........................................................................4

*Spinks v. City of St. Louis Water Div.,*
   176 F.R.D. 572 (E.D. Mo. 1997) .............................................................22

*Tabachnik v. Dorsey,*
   257 Fed. Appx. 409 (2d Cir. 2007) ............................................................9

*Time Warner Cable, Inc. v. DIRECTV, Inc.,*
   497 F.3d 144 (2d Cir. 2007) ....................................................................13

*Tomasini v. Walt Disney Co.,*
   84 F. Supp. 2d 516 (S.D.N.Y. 2000) .........................................................7

*U.S. v. Morrison,*
   529 U.S. 598 (2000) ................................................................................16

*Warner Bros. Entm't Inc. v. RPR Books*,
   575 F. Supp. 2d 513 (S.D.N.Y. 2008) .............................................................4, 6, 9

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996) ....................................................................................9

*Winston Chiu v. Man Choi Chiu*,
   71 A.D.3d 621, 896 N.Y.S.2d 132 (2d Dep't 2010) ...........................................18

*Yak v. Bank Brussels Lambert*,
   252 F.3d 127 (2d Cir. 2001) ..................................................................................4

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001) ...........................................................................4, 10

**STATUTES**

15 U.S.C. § 1125(a) ...................................................................................................13

17 U.S.C. § 101 ...........................................................................................................5

17 U.S.C. § 102(b) .......................................................................................................3

17 U.S.C. § 106A .......................................................................................................15

17 U.S.C. § 301 ......................................................................................................6, 15

17 U.S.C. § 301(a) .....................................................................................................22

17 U.S.C. § 411(a) ...................................................................................................5, 6

18 U.S.C. § 1341 ........................................................................................................17

18 U.S.C. § 1343 ........................................................................................................17

18 U.S.C. § 1961(1) ...................................................................................................17

C.P.L.R. § 213 ...........................................................................................................18

C.P.L.R. § 214(4) .......................................................................................................18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ...................................................................................................14

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 3, 4, 6

Fed. R. Civ. P. 12(f) ..............................................................................................1, 22

Fed. R. Evid. 201(c)...........................................................................................................................4

Fed. R. Evid. 902(6)...........................................................................................................................4

Moving Defendants Fox Broadcasting Corporation ("Fox")[1] and Sony Music Entertainment ("Sony") (collectively, "Defendants") submit this Memorandum in Support of their Motion to Dismiss the Complaint of Paul Thayil ("Plaintiff" or "Thayil") for Failure to State a Claim Upon Which Relief Can be Granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and To Strike Immaterial Matter, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

## I.  **<u>INTRODUCTION</u>**

The Complaint seeks $2.8 million in actual damages and $8.8 million in punitive damages from each Defendant, who are media entities that have some involvement with at least one[2] of America's most successful reality television shows:  American Idol®, Dancing With The Stars®, So You Think You Can Dance® and America's Got Talent® (collectively, the "Shows").[3]  On the basis that the Defendants "stole" his purported intellectual property through the creation of the Shows (Compl. ¶¶ 16, 18), Plaintiff asserts seven claims against Defendants, including copyright infringement, trade secret misappropriation, conspiracy, RICO, and fraud. The gravamen of the Complaint is Plaintiff's assertion that he authored a "marketing plan," attached to his Complaint as Exhibit A (hereafter, the "Marketing Plan"), and that Defendants somehow received and improperly used the "trade secret intellectual and copyrighted property

---

[1] There is no "Fox Corporation," so the Defendants have made the assumption that the Plaintiff meant to name "Fox Broadcasting Corporation," which broadcasts the American Idol® program, and "Fox Corporation" is simply improperly named.

[2] Not all Defendants are involved with all of these Shows, and the Defendants make no admissions as to their involvement or degree of involvement in the production, distribution, marketing or broadcast of these Shows.

[3] In May of 2010, the Plaintiff filed a Complaint (later amended) against the Defendants, with the exception of Fox Corporation and NBC Universal, before the United States District Court for the Western District of Missouri (Case No.: 10-3200-CV-S-RED) (the "Missouri Complaint").  The allegations alleged in the Missouri Complaint are virtually identical to the allegations made in this matter.  The Missouri Complaint was dismissed on venue grounds.

contained in Plaintiff's Marketing Plan" to develop the Shows.  (Compl. ¶¶ 16.)  As an initial matter, Plaintiff fails to plead that he even has a registered copyright, a prerequisite to filing suit. Moreover, assuming Plaintiff could overcome this procedural deficiency, even a cursory look at Plaintiff's Marketing Plan reveals no similarity whatsoever to any of the allegedly infringing Shows.  And because the Plaintiff's other claims are either preempted by the Copyright Act or wholly inappropriate to the facts the Plaintiff alleges, the Plaintiff's remaining claims are not viable.  Thus, the Complaint does not allege facts necessary to sustain any of the claims against Defendants.

Plaintiff's dance concept, called "ShyDancer," as described in the Marketing Plan, consisted of filming amateurs dancing in the most private rooms in their homes - like the bedroom or kitchen - so that the dancer can lose "inhibitions."  (Compl. Ex A., Marketing Plan § p. 6.)  Amateur tapes would then go into a pool to be selected for a half hour television show and also be made available for sale in two retail stores.  (*Id*.)  This hardly sounds like the format for either "Dancing with the Stars" or "So You Think You Can Dance" - shows that involve televised live dance competitions before panels of judges, with audience voting.

Plaintiff's music concept called "MusicFlow" was to have musicians from around the world perform at a concert, attend a filming session and be given the opportunity to have their CDs placed in the 5th Ave. New York City HMV store and the Oxford Street London HMV store. (Compl. Ex A., Marketing Plan, §§ pp. 4-5)  Plaintiff's promotion strategy consists of distributing "glossy car stickers" and driving cars with large flags advertising the MusicFlow website (*Id.*, p. 1).  Again, "MusicFlow" has no similarity to "American Idol" or "America's Got Talent," which are essentially televised talent shows, which involve auditions around the country, featuring selected performers competing for a top prize.

In sum, nothing in Plaintiff's Marketing Plan involves any of the hallmark characteristics of Defendants' Shows.  Indeed, the only similarity between any of Defendants' Shows and Plaintiff's Marketing Plan is the idea of amateur performances being commercialized.  Copyright law, however, does not protect ideas – it only protects expression found in original works of authorship.  17 U.S.C. § 102(b).

Plaintiff fails to establish that he has met any of the requirements necessary to assert *any* claims against these Defendants (or anyone else, for that matter).  Though Plaintiff switched venues, and now attempts to bring causes of action for the third time against Defendants, his Complaint still fails to articulate cognizable claims.  The Complaint, under even the most generous interpretation, fails to state any claim for relief and no amount of amending will cure what are fatal legal defects.  Accordingly, the Complaint should be dismissed without leave to amend.

## II.    ARGUMENT

### A.    Standards for Dismissal

When considering a motion to dismiss, this Court need not accept all legal conclusions as true.  As the United States Supreme Court has made clear:  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1947 (2009) (citing Fed. R. Civ. Proc. 8(a)(2)).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . ." *Id.* at 1949.  Even when the plaintiff is *pro se*, and therefore entitled to a liberal interpretation of pleading, the Plaintiff must still allege facts sufficient to state a legal claim to survive a motion to dismiss. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 728 (S.D.N.Y. 2002).

When reviewing a motion to dismiss under Rule 12(b)(6), the Court may consider, in addition to the pleadings, materials embraced by the pleadings and materials that are part of the public record. *Blue Tree Hotels Inv. v. Starwood Hotels & Resorts Inc.*, 369 F.3d 212, 217 (2d Cir. 2004); *see also Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006). Thus, courts may consider documents attached to pleadings and materials within the public record without converting a Rule 12(b)(6) motion into a motion for summary judgment, where the documents are referenced in the complaint and are integral to the plaintiff's claim. *See Sira v. Morton,* 380 F.3d 57, 57 (2d Cir. 2004); *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir. 2001). Here, the Court can consider both the Marketing Plan and the formats of the Shows since they are referenced repeatedly in the Complaint, and the Shows are in the public record. *See* Fed. R. Evid. 201(c) (discretionary judicial notice); Fed. R. Evid. 902(6) (newspapers and periodicals are "public records").

### B. Plaintiff Has Not Pled Any of the Required Elements of a Copyright Infringement Claim

Plaintiff alleges that Defendants "stole" his intellectual property, which he considers to be copyrighted. (Compl. ¶¶ 16, 18). To establish copyright infringement, a plaintiff must prove both ownership of a valid copyright and infringement of that copyright. *Gottwald v. Jones*, No. 11 Civ. 1432, 2011 WL 4344038, at *3 (S.D.N.Y. Sept. 12, 2011); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 108 (2d Cir. 2001); *Warner Bros. Entm't Inc. v. RPR Books*, 575 F. Supp. 2d 513, 533 (S.D.N.Y. 2008). Here, Plaintiff failed to plead either requirement.

#### 1. Plaintiff Failed to Plead Ownership of a Valid Copyright

Ownership of a valid copyright is established by proving (1) originality and copyrightability of the material and (2) compliance with the statutory formalities of the

Copyright Act, which includes a timely-obtained certificate of registration.[4] *See LaChapelle v. Fenty,* No. 11 Civ. 945, 2011 WL 2947007, at *2 (S.D.N.Y. July 20, 2011).

Even assuming that the Plaintiff's Marketing Plan is sufficiently original to merit copyright protection, Plaintiff's claim for copyright infringement must be dismissed because Plaintiff has not alleged that he holds a valid copyright registration for his Marketing Plan.  17 U.S.C. § 411(a) provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title[.]"  A "United States Work" is, for an unpublished work, a work authored by a citizen or "habitual resident" of the United States, and for published works, a work published first in the United States or another Berne Convention (or Universal Copyright Convention) country.  17 U.S.C. § 101.

Plaintiff's own allegations show that the Marketing Plan is unpublished.  Publication under the Copyright Act means "the distribution of copies … of a work to the public by sale or other transfer of ownership ….  [or] the offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display…."  17 U.S.C. § 101.  In the Complaint, Plaintiff repeatedly alleges that his Marketing Plan is "trade secret," and that to the extent he provided it to any person, it was "implied" to be "confidential and secret."  (Compl. ¶ 12.).  Therefore, the Marketing Plan must be an "unpublished work."  The Marketing Plan's putative author, the Plaintiff, is at least a habitual resident of the United States (he alleges that he resides in "Pulaski County, Arkansas" (Compl. ¶ 2)).  Because the work in question is unpublished, and its author, the Plaintiff, is at least a "habitual resident" of the

---

[4] Although the Supreme Court's recent decision in *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010), indicates that the registration requirement is not jurisdictional, a plaintiff still must effect registration before proceeding with an infringement claim.  17 U.S.C. § 411(a).  This failure alone is sufficient grounds for granting a motion to dismiss the copyright claims.

United States, the work is a "United States work."   Though Plaintiff alleges facts in the Complaint relating to the place the Marketing Plan was purportedly *created*, those facts do not change the reality that the Plaintiff is a habitual resident of the United States, and he is, therefore, bound by the registration requirement.   Therefore, the work is a United States work, and to institute an action for infringement of that work, the Plaintiff must have registered a claim to copyright in it.   Plaintiff has not done so, nor has he alleged any facts that would indicate he has started the process of registering his claim to copyright.   His appeal to "common law copyright" is misplaced, as no such concept exists in modern U.S. copyright jurisprudence.   17 U.S.C. § 301.   Therefore, to the extent Plaintiff attempts to state a claim for copyright infringement, that claim must be dismissed for failure to state a claim, because the Plaintiff has not registered his claim to copyright in that work.   17 U.S.C. § 411(a).   Since the Plaintiff has now had at least three opportunities to cure this defect, and has failed to do so, the Plaintiff's copyright claim should be dismissed with prejudice.

>           2.        Plaintiff Failed to Allege Facts Establishing Infringement

To prove copyright infringement, a Plaintiff must also show, for each Defendant, that Defendant had access to his work, and that the accused Shows are substantially similar to his work.   *Warner Bros. Entm't Inc.,* 575 F. Supp. 2d at 533.   Plaintiff's allegation that the Defendants "stole and used the 'Marketing Plan' to produce and broadcast their own television shows" is conclusory and unsupported by factual assertions, and fails to establish a claim for copyright infringement under even the liberal standards of Rule 12(b)(6).

>           a)        Plaintiff's Infringement Claim Fails Because He Cannot Establish
>                     any of the Defendants Had Access to His Work

To show access, the Plaintiff must do more than merely allege that he "provided" the work to the Defendants (Compl. ¶ 2) or that the Defendants "received a copy of the 'Marketing

Plan' either directly, indirectly or inadvertently from the Plaintiff."  (Compl. ¶ 18.)  Access means that an alleged infringer had a reasonable possibility, not simply a "bare possibility," of hearing [or seeing] the prior work; access cannot be based on mere "speculation or conjecture." *Jorgensen v. Epic/Song Records*, 351 F.3d 46, 51 (2d Cir. 2003).  *Reece v. Marc Ecko Unltd.*, No. 10 Civ. 02901, 2011 WL 4112071, at *6 (S.D.N.Y. Aug. 19, 2011) (plaintiff must allege facts that show the defendants had a "reasonable possibility" of viewing the allegedly infringed work).  To support a claim of access, a plaintiff must offer significant, affirmative and probative evidence.  *Id.*  Since it is rare in a copyright infringement action for plaintiff to have direct evidence of the defendant viewing and copying its work, courts have recognized that access may be shown by circumstantial evidence. *Hamil Am. Inc. v. GFI,* 193 F.3d 92, 99 (2d Cir. 1999).  As proof of access, a plaintiff may show that (1) the infringed work has been widely disseminated or (2) a particular chain of events exists by which the defendant might have gained access to the work. *Tomasini v. Walt Disney Co.,* 84 F. Supp. 2d 516, 519 (S.D.N.Y. 2000).

Here, the Plaintiff does not, and cannot, allege that the Marketing Plan was widely disseminated, and in fact, his own assertions belie such a finding.  Where a work is unpublished, as is the case at bar, it is considered not to have been widely disseminated.  *Silberstein v. Fox Entm't Group, Inc.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004) (This court has consistently recognized widespread dissemination giving rise to an inference of access exclusively in cases where the allegedly infringed work has had considerable commercial success or is readily available on the market.).  And as discussed above, the Plaintiff repeatedly says that he did not widely disseminate his Marketing Plan, since his aim was, apparently, to keep it secret.

Likewise, the Plaintiff cannot plausibly allege any facts that reasonably suggest any of the Defendants are linked to his unpublished Marketing Plan.  In the Complaint, Plaintiff alleges that in February 1997 he provided the Marketing Plan to the "Herald-Sun Newspapers in

Melbourne, Australia, which is a part of Fox Corporation."  (Compl. ¶ 16)  Then, Plaintiff alleges that "Cameron Adams from Herald-Sun Newspapers sent Plaintiff's Marketing Plan to the Sony Music Melbourne, Australia office ("Sony Australia")."  (*Id.*)  According to Plaintiff's logic, at some point in the next few years, someone at Sony Australia (one must surmise) somehow provided the Marketing Plan to the Defendants, who are separate entities from the ones mentioned in the Complaint.[5]  These self-serving allegations of an attenuated chain of possession cannot support a finding that any of the Defendants had access to the Marketing Plan.  *See Jorgensen*, 351 F.3d at 51 (holding that corporate receipt alone is insufficient to establish a chain of events leading to access, as that concept is used in copyright law).  Indeed, the Plaintiff makes no attempt to theorize as to how the Defendants, other than Sony or Fox, may have had access to the Marketing Plan.  Regarding Sony, Plaintiff alleged no facts regarding to whom "Mr. Adams" or Plaintiff personally spoke to at Sony, who read, or even heard of the Plaintiff's Marketing Plan before this lawsuit was filed, or even that the Defendant, Sony Music Entertainment, had any access to the Marketing Plan.  The fact that Sony Australia,[6] which is a completely separate company that the entity named in this lawsuit, may have received the Marketing Plan is insufficient evidence to establish "access" without Plaintiff providing more information regarding how Sony, and the other Defendants filing this motion, would have received the Marketing Plan.  *Muller v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 2550, 2011 WL 1330632, at *11 (S.D.N.Y. Mar. 30, 2011) (holding that plaintiff alleges only "bare corporate receipt" of his works by defendants, and without any allegation of a nexus between the recipients and the alleged infringers," plaintiff's conclusory and conjectural assertions are "insufficient to raise a triable issue of access.").  Similarly, Plaintiff has not alleged whom at Fox had access to

---

[5] *See* the Defendants' Rule 7.1 corporate disclosures.
[6] *See* https://www.sony.com.au/section/contactus; http://www.sonymusic.com.

the Marketing Plan.  Accordingly, as the Complaint states no facts that would support a claim that the Defendants had access to the Plaintiff's Marketing Plan, Plaintiff's infringement claims must be dismissed.

        b)    <u>The Shows are not Substantially Similar to Plaintiff's Marketing Plan</u>

Even if Plaintiff had registered a claim to copyright (he did not) and the Defendants had access to his Marketing Plan (which they did not), Plaintiff's copyright claims fail because he cannot show that any of the four Shows is substantially similar to his Marketing Plan.  The Court can determine substantial similarity as a matter of law when the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or when no reasonable jury, properly instructed, could find that the two works are substantially similar.  *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (quoting *Warner Bros. Inc. v. Am. Broad Cos.*, 720 F.2d 231, 240 (2d Cir. 1983); *Tabachnik v. Dorsey,* 257 Fed. Appx. 409, 410 (2d Cir. 2007) (granting motion to dismiss where no substantial similarity existed).

To be "substantially similar," works must bear some resemblance to each other in both idea and expression.  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 67 (2d Cir. 2010).  "For [this] prong it is essential that the similarity relate to copyrightable material."  *Bill Diodato Photography, LLC v. Kate Spade, LLC*, 388 F. Supp. 2d 382, 389-90 (S.D.N.Y. 2005).  "When similar works resemble each other only in unprotected aspects—for example, when similarities inhere in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff—defendant prevails."  *Id*. at 390; *see Gottwald*, 2011 WL 4344038 at *4; *Muller*, 2011 WL 1330632 at *9.  In the Second Circuit, "[t]he standard test for substantial similarity between two items is whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as

the same." *Pyatt v. Raymond*, No. 10 Civ. 8764, 2011 WL 20785831, at *4 (S.D.N.Y. May 19, 2011) (*citing Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001); *DiTocco v. Riordan*, No. 10 Civ. 4186, 2011 WL 4373943, at *8 (S.D.N.Y. Sept. 20, 2011) (granting motion to dismiss because works at issue not substantially similar); *Muller*, 2011 WL 1330632 at *9 (same).

In applying the so-called "ordinary observer test," the Court ask whether "an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Id.* (*citing Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995); *Ditocco*, 2011 WL 4373943 at *8-9. That being said, the Court must focus on the "total concept and overall feel" of the work with that of the allegedly infringing work. *Peter F. Gaito Architecture*, 602 F.3d at 66. In this case, the works in question have only one common element: the idea of amateur performances. They are therefore neither similar in their extrinsic ideas, nor similar in expression. A single, generic element – especially an unprotectable idea - cannot be the backbone of a copyright infringement claim. *See Great Importations, Inc. v. Caffco Intern., Inc.*, No. 95 Civ. 0514, 1997 WL 414111, at *6 (S.D.N.Y. July 24, 1997) (similarity in idea alone between plaintiff's and defendant's works cannot provide the basis for finding substantial similarity).

Plaintiff's Marketing Plan describes the "Musicflow" and "ShyDancer" concepts as involving:

- ShyDancer: Amateurs videotaping themselves dancing in a home environment, or allowing others to videotape them dancing in a private setting (Compl., Ex. A ¶ p.6);
- ShyDancer: Those amateurs submitting videos for inclusion on a disc of dance performances to be sold at retail locations (*Id.*);
- ShyDancer: Selection (by whom is not specified) of some of those videos for inclusion in a "half hour TV Show" (*Id.*);
- Musicflow: Performances by musicians at "Musicflow" concerts (Compl., Ex. A ¶ p.1-5);
- Musicflow: Videotaping of musical performances at those concerts (*Id.*);

- Musicflow: Inclusion of those taped music performances on a CD for sale at retail locations (*Id*.).

By contrast, the Marketing Plan does not discuss *any* of the most basic hallmarks of the accused Shows:

- A "contest" element whereby contestants vie for a prize, such as a music recording contract, performance contract, or trophy;
- Audience participation elements, whereby television viewing audiences vote for their favorite performers;
- A panel of diverse industry professionals and media personalities acting as judges and commentators during the process;
- In the case of the "Musicflow" concept, a television component (the description appears limited to live concerts and CD sales, lacking a television component);
- An "audition" and "selection" component, where contestants audition for a spot on the program, and after a series of selections, compete against each other in a narrowed field.[7]

In short, the only similarity between the idea expressed in the Marketing Plan and the four Shows is amateur performance. And as any karaoke singer or high school talent show producer knows, these ideas are neither unique nor protectable. As a result, even if the Plaintiff *could* show he has a valid copyright, and that Defendants had access to his work, he cannot show that the Shows are substantially similar to his work, therefore, his copyright claim must be dismissed.

### C.   Plaintiff's Trade Secret and Lanham Act Claims Fail Because He Has Not Alleged the Existence of a Trade Secret or Trademark, Much Less Misappropriation or Infringement by Any Defendant

In Count VI, Plaintiff attempts to state a claim for trade secret misappropriation. (Compl. ¶¶ 19, 29.) The Plaintiff alleges that his Marketing Plan is a "trade secret." Under New York law,[8] courts consider the following six factors to be relevant in deciding whether particular information is a trade secret: (1) the extent to which the information is known outside of the [plaintiff's] business; (2) the extent to which it is known by employees and others involved in the

---

[7] For more details on the Shows visit www.fox.com, www.abc.go.com and nbc.com. Further, should the Court determine it would be helpful or necessary, Defendants are willing to promptly provide DVDs of the Shows for purposes of evaluating substantial similarity between the Plaintiff's Marketing Plan and the Shows.

[8] New York law applies to tort claims, when the tort was allegedly committed in New York. *Globalnet Financial.com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377 (2d Cir. 2006).

business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitor; (5) the amount of effort or money expended in developing the information; and, (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  *Anacomp, Inc. v. Shell Knob Servs., Inc.,* No. 93 Civ. 4003, 1994 WL 9681, at *6-7 (S.D.N.Y. Jan. 10, 1994).  The most important factor is whether the information is secret. *See Lehman v. Dow Jones & Co.,* 783 F.2d 285, 289 (2d Cir. 1986).  To establish the existence of a trade secret, the plaintiff must show a substantial element of secrecy, to the extent that it would be difficult to acquire the information but by use of "improper means." *Q-Co Industries, Inc. v. Hoffman,* 625 F. Supp. 608, 617 (S.D.N.Y. 1985).

Here, Plaintiff has not alleged that he used any efforts, much less reasonable efforts, to guard the secrecy of his Marketing Plan.  The Marketing Plan contains no disclaimer regarding the use of information contained within the Marketing Plan (Compl., Ex. A ¶ p.1-5).  In fact, it appears he sent it indiscriminately to anyone he thought might read it, without regard for whether they were bound to guard it as confidential.  (Compl. ¶ 16).[9]  Thus, the Plaintiff took no steps to guard the secrecy of this document.  The Plaintiff also fails to establish the amount of time, money and effort used in developing his Marketing Plan, or the economic value of the Marketing Plan based on the  Defendants alleged use.  Put simply, there is no trade secret upon which Plaintiff may assert a claim.

Under New York law, in order to prevail on such a claim, Plaintiff must show that (1) it possesses a trade secret and (2) defendant is using that trade secret in breach of an agreement,

---

[9] The Defendants do not mean to insinuate, of course, that any of these measures would be sufficient to create a trade secret.  Thus, Plaintiff should not be granted time to amend his pleading because there are no new facts that he may allege which are sufficient to sustain his allegations.

confidence, or duty, or as a result of discovery by improper means. *DoubleClick Inc. v. Henderson,* No. 116914/97, 1997 WL 731413 (N.Y. Sup. Ct. N.Y. Cnty. Nov. 7, 1997) (citing *Integrated Cash Mgmt. Serv., Inc. v. Digital Transactions, Inc.,* 920 F.2d 171, 173 (2d Cir. 1990)).  As indicated above, Plaintiff is not in possession of a trade secret, nor did Defendants owe Plaintiff any duty with respect to the Marketing Plan.  Put simply, Plaintiff failed to allege any facts that support a trade secret claim; in fact, his allegations admitting unqualified distribution belie such a claim entirely.

The Plaintiff also alleges in Count VI that the Defendants violated the "Lanham Act" (and his vague "failure to attribute" claim may be an attempt to allege "passing off" under the Lanham Act).  Assuming the Plaintiff is referring to Lanham Act section 1125(a) (15 U.S.C. §1125(a))[10], and his Lanham Act claim accuses Defendants of "passing off" the Shows as original material, such a claim is preempted by the Copyright Act, because it involves only alleged copying of material (or failure to attribute) covered by the Copyright Act.  *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  Plaintiff alleges no facts indicating he is asserting trademark rights, false advertising or any other claim that could potentially implicate the Lanham Act.  In any event, to bring any kind of Lanham Act claim, the Plaintiff would have to show a likelihood of consumer confusion.  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153, 158 (2d Cir. 2007).  Given that the Plaintiff's concepts never made it to market, there is no consumer base that could be confused as to the source of the parties' respective creations.  Therefore, any "Lanham Act" claim is not only inapplicable to the facts, but also preempted by the Copyright Act.

---

[10] Complaint refers to Lanham Act "15 U.S.C. § 1126," which is inapplicable to any allegation in the Complaint, as that section relates to filing international trademark applications.

**D.    Plaintiff's Tort Claims (Counts I, II, III, IV and VI) Fail Because Plaintiff Has Not Alleged Facts Establishing the Elements of Those Claims, and Many of Those Claims are Preempted by the Copyright Act**

To the extent Plaintiff attempts to allege other claims, each must be dismissed, because either he has not alleged the elements necessary to state such claims, or those claims are preempted by the Copyright Act, or both.  Plaintiff uses words in the Complaint that indicate he is trying to make common law claims for fraud, conversion, failure to attribute, conspiracy, breach of fiduciary duty, "equal protection" and theft.  All of these claims fail, as set forth below.

1.    <u>Fraud</u>.  The elements of a fraud claim under New York law are:  (1) a material representation or omission of fact; (2) the [defendant's] knowledge of its falsity; (3) the [defendant's] intent to defraud; (4) reasonable reliance on the part of the plaintiff and (5) damages to the plaintiff.  *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).  In order to comply with Fed. R. Civ. P. 9(b), the Complaint must further: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 276, 291 (2d Cir. 2006).  In addition, although Rule 9(b) allows a plaintiff to allege fraudulent intent generally, a plaintiff must allege facts that give rise to a strong inference of fraudulent intent.  *Shields v. Citytrust Bancorp., Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994).

Plaintiff has not alleged even the barest facts necessary to establish that any of these elements are met, nor can he, since the Defendants had never heard of Plaintiff prior to the time they were served with the original Missouri Complaint, served in June, 2010, and thus could not have made any statements to him upon which he could have relied for anything.  Plaintiff fails to allege any statements, false or otherwise, made to him by any Defendant.  As such, Plaintiff fails to state any facts supporting a claim for fraud.

14

2.     <u>Conversion</u>.  To state a claim for conversion under New York law, Plaintiff must show that someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession. *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 860 N.E.2d 713, 717 (2006). A plaintiff must show: (1) a possessory right or interest in the property; and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.  Even if Plaintiff could establish that the Defendants deprived him of the use of property (which he cannot do, because the Shows bear no resemblance to his Marketing Plan), conversion claims based on copyrightable subject matter are preempted because the allegedly converted work constitutes subject matter protected by the Copyright Act, and the conversion claim involves only the same activity proscribed by the Copyright Act: copying a protected work.  17 U.S.C. § 301; *Barclays Capital Inc. v. Theflyonthewall.com*, No. 10-1372-cv, 2011 WL 2437554, at *11-15 (2d Cir. June 20, 2011) (the Second Circuit held that the Copyright Act preempts plaintiff's "hot-news" misappropriation claims under New York State law); *Miller v. Holtzbrinck Publishers, LLC*, 377 Fed. Appx. 72, 74 (2d Cir. 2010) (holding that the Copyright Act preempts plaintiff's conversion claims where the particular work to which the claim is being applied falls within the Act); *Logicom Inclusive, Inc. v. W.P. Stewart & Co.*, No. 04 Civ. 0604, 2004 WL 1781009, at *17 (S.D.N.Y. Aug. 10, 2004).  Indeed, the Plaintiff admits as much in his Complaint.  (Compl. ¶ 16-17)  Therefore, the Plaintiff can state no claim for conversion.

3.     <u>Failure to Attribute</u>.  In Count II, Plaintiff appears to be trying to plead a claim for "failure to attribute."  Neither the Copyright Act nor any state law provides a right to attribution, except in the case of established works of visual art.  17 U.S.C. § 106A.  The Marketing Plan is clearly not a "work of visual art" (defined as a "painting, drawing, print or sculpture, existing in a single copy or a limited print run," 17 U.S.C. § 106A).  Accordingly, even if the Defendants

15

had used the Plaintiff's work (which they did not), they would have no obligation to attribute his "contribution."  As such, Plaintiff has no viable cause of action for "failure to attribute."

       4.    <u>Conspiracy</u>.   In Count III, Plaintiff generally accuses the Defendants of "conspiring" together.  (Compl. ¶ 28.)  However, to state any claim for civil conspiracy in New York, Plaintiff must first allege the elements of an underlying tort.  A civil conspiracy claim is not itself actionable in the absence of an underlying wrongful act or tort.  *Grocery Haulers, Inc. v. C&S Wholesale Grocers, Inc.*, No. 11 Civ. 3130, 2011 WL 4031203, at *3 (S.D.N.Y. Sept. 12, 2011) (*citing Crigger v. Fahnestock and Co., Inc.*, 443 F.3d 203, 237 (2d Cir. 2006).  Here, Plaintiff has failed to allege *any* underlying act or tort, as not one of his threadbare accusations amounts to a viable cause of action.  Therefore, there can be no conspiracy claim as a matter of law.

       5.    <u>Equal Protection</u>.   Under Count IV, Plaintiff appears to believe that the Defendants somehow deprived him of "equal protection" and "free exercise of rights."  (Compl. § 29.)  Equal protection claims, however, may only be brought against governmental entities.  *U.S. v. Morrison*, 529 U.S. 598 (2000) ("[t]he Fourteenth Amendment, by its own terms, prohibits only state action").  No Defendant falls into that category; they are all private entities and individuals, not government actors, and Plaintiff has not alleged, and cannot, in good faith ever allege otherwise.  Accordingly, there is no "equal protection" claim that could be stated here.

       6.    <u>Breach of Fiduciary Duty</u>.  To establish a fiduciary relationship under New York, Plaintiff must show: (1) the existence of a fiduciary duty, (2) a breach of the fiduciary duty, and (3) damages resulting therefrom.  *Barrett v. Freifeld*, 64 A.D.3d 736, 739, 883 N.Y.S.2d 305, 308 (2d Dep't 2009). A fiduciary relationship may exist when one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge, but not in an arm's-

length business transaction involving sophisticated business people.  *Id*.  Plaintiff makes no attempt to allege facts that would indicate any fiduciary relationship existed between himself and any Defendant, or even that any of the Defendants ever met him or made any statement that would indicate Plaintiff could place his trust in them.  Accordingly, any purported claim for breach of fiduciary duty must fail.

7.     <u>RICO</u>.  In Count V, Plaintiff vaguely alleges he is bringing a "RICO" claim.  To prevail on a RICO claim, Plaintiff must prove "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  To establish a pattern, "at least two acts of racketeering activity" are required."  *Id.*  A RICO claim can only be predicated on particular acts listed in 18 U.S.C. § 1961(1).  Moreover, "the predicate acts must be related and must 'amount to or pose a threat of continued criminal activity.'"  *Id.* (citation omitted).  Here, Plaintiff alleges violations of 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud) as the predicate acts for his RICO claim.  (Compl. ¶ 31.)  With respect to Plaintiff's allegations of mail and wire fraud, Plaintiff must alleged "(1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme."  *S.Q.K.F.C., Inc. v. Bell Atlandtic Tricon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  "Though mail fraud can be a predicate act, mailings are insufficient to establish the continuity factor unless they contain misrepresentations themselves."  *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 569 (W.D.N.Y. 2011) (*citing Wisdom v. First Midwest Bank*, 167 F.3d 402, 407 (8th Cir. 1999).  The court must look to the underlying scheme to defraud.  *Id.* (*citing Jerome M. Sobel & Co. v. Fleck*, 2003 WL 22839799, *10-11 (S.D.N.Y. 2003).  In this case, Plaintiff has woefully failed to allege anything that gives rise to a RICO claim.  He has failed to allege *any* use of mail or wires by the Defendants, or *any* pattern of activity directed at Plaintiff.  The RICO claim, therefore, fails.

17

8.      <u>Statute of Limitations</u>.  All of the tort claims in this lawsuit are time barred.  The statute of limitations for breach of fiduciary duty is three years pursuant to CPLR § 214(4); s*ee* *IDT Corp. v. Morgan Stanley Dean Witter & Co*., 12 N.Y.3d 132, 139, 907 N.E.2d 268, 272 (2009); *Winston Chiu v. Man Choi Chiu,* 71 A.D.3d 621, 896 N.Y.S.2d 132 (2d Dep't 2010).  "The statute of limitations begins to run when a plaintiff knew or should have known of the facts underlying the breach of fiduciary duty claim." *Grosso v. Radice*,  No. 07-cv-3620, 2009 WL 749906, at *7 (E.D.N.Y Mar. 16, 2009) (breach of fiduciary duty claim by decedent's wife against decedent's daughter for monetary damages was time barred as suit was brought more than three years after alleged breach).  Conversion is subject to a three year statute of limitations which begins to run the date the property was allegedly converted.  *Mirvish v. Mott,* 75 A.D. 269, 901 N.Y.S.2d 603 (1st Dep't 2010).  The statute of limitations for fraud is six years from the accrual of the claim or within two years from the actual or imputed discovery of the  alleged fraud.  C.P.L.R. § 213

Here, each of the Shows Plaintiff alleges have been created due to the ideas included in the Marketing Plan have been airing on network television for years.  Indeed, "American Idol" first premiered on Fox on June 11, 2002.  "Dancing With The Stars" premiered on ABC on June 1, 2005.  "So You Think You Can Dance" premiered on Fox on July 20, 2005.  "America's Got Talent" premiered on NBC on June 26, 2006.  Critically, Plaintiff chose not to file a lawsuit based on Defendants alleged wrong-doing until May 21, 2010 in Missouri Federal Court, Western District (Case No. 10-3200-CV-S-REL).  After being allowed to amend the original complaint, that case was summarily dismissed on January 25, 2011 (*Id*.; Dkt No. 58).  Now, nearly a decade since the first show (American Idol) Plaintiff alleges was appropriated by Defendants, Plaintiff now attempts his "third act" by filing this Complaint in New York Federal Court.  (Dkt. No. 1)  Putting aside the fact that each television show must be evaluated

individually in terms of time restraints for bringing a claim, to sustain any of these claims, Plaintiff must allege that he only recently discovered the existence of the Shows.  In other words, this Court must infer that Plaintiff had no idea that any of the Shows existed until July 12, 2008 (the date Plaintiff first gained knowledge of the Shows for purposes of sustaining the three-year limitations period under a breach of fiduciary duty and conversion claim).  This allegation is simply not reasonable or believable.  Even if the Court viewed Plaintiff's allegations in a favorable light, he is time-barred from filing any of the state law claims.

### E.   Plaintiff has Failed to Properly Plead the Elements for Injunctive Relief

A preliminary injunction is only appropriate if the movant shows (1) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor, plaintiffs also must demonstrate (2) a likelihood of irreparable harm; (3) that remedies available at law are inadequate; and (4) that the public interest would not be disserved by issuing preliminary relief.  *Salinger v. Colting,* 607 F.3d 68, 80 (2d Cir. 2010); *MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192 (2d Cir. 2004). The plaintiff must show a "real or immediate threat that the plaintiff will be wronged again." *Schroedel v. New York Univ. Med. Ctr.* 885 F. Supp. 594, 598 (S.D.N.Y. 1995).

Whether to grant or deny a preliminary injunction lies within the sound discretion of the district court. *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232, 237 (2d Cir. 2001); *P & G v. Ultreo, Inc.,* 574 F. Supp. 2d 339, 344 (S.D.N.Y. 2008).  In all cases, a preliminary injunction is an "extraordinary remedy" that should not be routinely granted. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79-80 (2d Cir. 1990). The party seeking the injunction carries the burden of persuasion to demonstrate, "by a clear showing," that the necessary elements are satisfied. *See Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997).

As indicated above, there is no likelihood of success on the merits with respect to any of the Plaintiff's claims.  Plaintiff cannot sustain a claim for copyright infringement where he cannot prove that Defendants had access to his Marketing Plan or that the ideas for television shows contained in the Marketing Plan bear a substantial similarity to the Shows.  Further, To the extent the Plaintiff attempts to allege other claims, each must be dismissed, because either he has not alleged the elements necessary to state such claims, or those claims are preempted by the Copyright Act, or both.  In addition, the balance of hardship does not tip in the Plaintiff's favor.  Indeed, just the opposite.  Defendants spend significant amounts of time, money and resources to produce the Shows.  If an injunction were granted, it would only serve seriously hinder each Defendant's economic interest, along with the interest of their respective shareholders.

Regarding irreparable harm, "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters, Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990).  A party can establish irreparable harm "if it shows that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Rex Med. L.P. v. Angiotech Pharms. Inc.,* 754 F. Supp. 2d 616, 621 (S.D.N.Y. 2010).  The standard for irreparable harm to Plaintiff's property interest in the copyright context is based largely on the possibility of market confusion.  *Salinger,* 607 F.3d at 81.  Here, the only similarity between the idea expressed in the Marketing Plan and the four Shows is amateur performance.  When considering this fact, and the fact that the ideas contained in the Marketing Plan were never published or widely disseminated, there is no possibility for market confusion.  Further, even if there were a continuing harm, it is the type of harm that could be redressed by monetary compensation.  The Shows, particularly American Idol, have been airing on network television for nearly a decade.  Since Plaintiff's argument is that Defendants' allegedly appropriated his idea and offered him no

20

"compensation" in relation to that idea (Compl. ¶ 12), the harm the Plaintiff has allegedly suffered can be cured by monetary means.

Further, "in making a determination of irreparable harm, both harm to the parties and ot the public may be considered." *In re Northwest Airlines Corp.*, 349 B.R. 338, 384 (S.D.N.Y. 2006). Here, if Plaintiff's request for injunctive relief were granted and production of the Shows ceased, the public at large will be harmed. Numerous corporate sponsors would suffer sustained economic losses. Further, hundreds of employees connected to the Shows may be furloughed, or ever worse, terminated, due to lack of revenue from failure to air the Shows.

Accordingly, since the Plaintiff cannot establish the elements for a preliminary injunction, and such relied would in fact cause harm to the public at large, injunctive relief should not be granted.

### F.    Plaintiff Is Not Entitled To Recover Punitive Damages As a Matter of Law, and Plaintiff's Reference to Punitive Damages Must Be Stricken

Plaintiff seeks to recover $8.8 million in punitive damages from each Defendant. Under New York law, punitive damages are not awarded as a matter of course. *John Wiley & Sons, Inc. v. Glass*, No. 10 Civ. 598, 2010 WL 1848226, at *3 (S.D.N.Y. May 7, 2010). Generally, punitive damages "have been limited to conduct evidencing a high degree of moral turpitude and demonstrating such wanton dishonesty as to imply a criminal indifference to civil obligations." *Id*. Here, it is clear based on the facts in the Complaint that the alleged actions of Defendants do not come close to satisfying this standard. Plaintiff has not proven that the Defendants had any knowledge of his Marketing Plan whatsoever. Plaintiff has not proven that any substantially similarity exists between the Defendants Shows and his proposed shows (Shydancer and MusicFlow). Indeed, Plaintiff's tort claims must be dismissed and, in any event, punitive damages are not recoverable in a copyright action. *Pyatt*, 2011 WL 20785831, at *10; *See*

*Football Ass'n Premier League Ltd. v. YouTube, Inc.*, 633 F. Supp. 2d 159, 167 (S.D.N.Y. 2009) ("There is no circumstance in which punitive damages are available under the Copyright Act of 1976"); *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 330 (S.D.N.Y. 2008) ("[I}rrespective of whether a plaintiff is seeking actual or statutory damages, punitive damages are not available under the Copyright Act of 1976.")

Therefore, to the extent Plaintiff is allowed to proceed with his copyright claims, the references to punitive damages must be stricken. Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to strike "immaterial" or "impertinent" matter from a pleading. Fed. R. Civ. P. 12(f). *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 456 (S.D.N.Y. 2008). Although courts often hesitate to strike material from a pleading, "a motion to strike maybe used to strike any part of the prayer for relief when the damages sought are not recoverable as a matter of law." *Bureerong v. Uvawas*, 922 F. Supp. 1450, 1479, n. 34 (C.D. Cal. 1996); *Martinez v. Ketchum Adver. Co.*, 865 F. Supp. 166, 167-68 (S.D.N.Y. 1994); *Spinks v. City of St. Louis Water Div.*, 176 F.R.D. 572 (E.D. Mo. 1997) (striking punitive damages claim as being unavailable as a matter of law).

The Copyright Act expressly preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright. . . ." 17 U.S.C. § 301(a). Federal and state courts across the country repeatedly and unanimously hold that Section 301(a) bars recovery of punitive damages arising from copyright violations. *Davis v. The Gap, Inc*., 246 F.3d 152, 172 (2d Cir. 2001); *Hays v. Sony Corp. of Am.,* 847 F.2d 412 (7th Cir. 1988); Accordingly, Plaintiff's request for punitive damages should be stricken under Rule 12(f).

## III.    **CONCLUSION**

The Plaintiff tries in vain to use as many legal buzzwords as possible to formulate a cause of action, yet even after having had two priot bites at the apple (Two in the Western District of

Missouri), his entire complaint boils down to one allegation -- that the Defendants "used" his work as the basis for the Shows.  Such an accusation falls squarely under the Copyright Act, and as discussed herein, the Copyright Act is simply not availing.  The Plaintiff failed to obtain the copyright registration necessary to bring a claim under the Copyright Act, and even if he had (or later does), he cannot allege either the access to or the similarity of the works necessary to state a copyright infringement claim.  The remaining "claims" are either preempted by the Copyright Act, clearly not applicable, or so vague as to be indecipherable.  Accordingly, the Plaintiff's Complaint should be dismissed, with prejudice.

Dated: October 5, 2011
New York, New York

SNR DENTON US LLP


By: s/_____
    Rebecca Hughes Parker (RP-6262)
    1221 Avenue of the Americas
    New York, New York   10020
    Tel.: (212) 768-6700
    Fax: (212) 768-6800
    rebeccahughes.parker@snrdenton.com

    Andrea Kimball
    Rebecca Stroder
    SNR Denton US LLP
    4520 Main Street, Suite 1100
    Kansas City, Missouri 64111
    Tel.: (816) 460-2400
    Fax: (816) 531-7545
    andrea.kimball@snrdenton.com
    rebecca.stroder@snrdenton.com

    *Attorneys for Defendants Fox Broadcasting Corporation and Sony Music Entertainment*

Certificate of Service

I hereby certify on this 5th day of October, 2011, I electronically filed the Notice of Appearance, Notice of Motion to Dismiss and the Memorandum of Law in Support of Defendants' Motion to Dismiss Complaint for Failure to State a Claim Upon Which Relief Can be Granted and Motion to Strike with the Clerk of the Court using the CM/ECF system, and I deposited a copy of the foregoing document with the United States Postal Service, first-class postage prepaid to:

Paul Thayil
Musicflow LLC
100 Park Dr., Apt. 728
Maumelle, AR  72113
musicflow1@yahoo.com
*Plaintiff, pro se*

Chelley E. Talbert, Esq.
NBC Universal
30 Rockefeller Plaza
New York, NY 10112
chelley.talbert@nbcuni.com
*Attorneys for Defendant*
*NBC Universal*

Ilene S. Farkas, Esq.
Pryor Cashman LLP
7 Times Square
New York, NY 10036
ifarkas@pryorcashman.com
*Attorneys for Defendant EMI*
*Entertainment World Inc.*

          s/Rebecca Hughes Parker

          *Attorneys for Defendants Fox Broadcasting*
          *Corporation and Sony Music Entertainment*