**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PAUL THAYIL,

                Plaintiff,

    v.

FOX CORPORATION; SIMON COWELL;
EMI MUSIC PUBLISHING COMPANY; SONY
MUSIC ENTERTAINMENT; SIMON FULLER; 19
ENTERTAINMENT; CKX, INC.; NIGEL
LYTHGOE; AND NBC UNIVERSAL,

                Defendants.

11 Civ. 4791 (SAS)

**ECF Case**

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NBC UNIVERSAL'S MOTION TO DISMISS THE COMPLAINT AND FOR AN AWARD OF COSTS AND ATTORNEYS' FEES

NBCUniversal Media LLC
Chelley E. Talbert
chelley.talbert@nbcuni.com
30 Rockefeller Plaza
New York, New York 10112-0002
Tel: 212.664.2527
Fax: 212.664.6572

*Attorneys for Defendant NBC
  Universal*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

ARGUMENT ........................................................................................................................ 5

I.     THE COMPLAINT DOES NOT COMPLY WITH FED. R. CIV. P. 8(A) AND
SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6) ...................... 5

II.    PLAINTIFF HAS NOT PLED ANY OF THE REQUIRED ELEMENTS OF A
COPYRIGHT INFRINGEMENT CLAIM ........................................................................ 6

    A.  Plaintiff Has Failed To Plead Ownership Of A Valid Copyright ................................. 6

        1.   Plaintiff has not established the requisite copyright registration......................6
        2.   The Marketing Plan is not deserving of U.S. copyright protection..................8

    B.  Plaintiff Has Failed To Plead NBCU Copied His Work.............................................. 9

    C.  Plaintiff Has Failed To Plead Facts Showing Substantial Similarity Between His
Marketing Plan And America's Got Talent .................................................................. 10

III.   PLAINTIFF HAS NOT PLED THE REQUISITE ELEMENTS OF A LANHAM ACT
OR FAILURE TO ATTRIBUTE CLAIM ........................................................................ 15

IV.   PLAINTIFF HAS NOT PLED THE REQUISITE ELEMENTS OF A TRADE SECRET
CLAIM ................................................................................................................................. 16

V.    PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED............................. 18

    A. RICO ............................................................................................................................. 18
    B. Equal Protection............................................................................................................ 19
    C. Breach Of Fiduciary Duty............................................................................................ 19
    D. Fraud ............................................................................................................................. 20
    E. Conversion .................................................................................................................... 21
    F. Unjust Enrichment ....................................................................................................... 22
    G. Conspiracy ................................................................................................................... 23

VI.   DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES AND
COSTS ................................................................................................................................. 23

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Alexander* v. *Murdoch*, No. 10 Civ. 5613, 2011 WL 2802899 (S.D.N.Y. May 27, 2011)....... 5, 12

*Armstrong* v. *Virgin Records, Ltd.*, 91 F. Supp. 2d 628 (S.D.N.Y. 2000).................................. 16

*Ashcroft* v. *Iqbal*, 129 S. Ct. 1937 (2009) ............................................................... 5, 10

*Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912 (1993) .......................... 17

*ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...................................... 5

*Attia* v. *Soc'y of N.Y. Hosp.*, 201 F.3d 50 (2d Cir. 1999) .............................................. 8

*Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544 (2007)....................................................... 5, 6

*Bisson* v. *Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045
 (2d Cir. Nov. 20, 2008)............................................................................... 5

*Briarpatch Ltd.* v. *Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) ............................... 18, 23

*Bridgeman Art Library, Ltd.* v. *Corel Corp.*, 36 F. Supp. 2d 191 (S.D.N.Y. 1999)...................... 8

*Burry* v. *Madison Park Owner LLC*, 84 A.D.3d 699, 924 N.Y.S.2d 77 (1st Dep't 2011) ........... 20

*Canal+ Image UK Ltd.* v. *Lutvak* (*Canal*), 773 F. Supp. 2d 419 (S.D.N.Y. 2011)............... *passim*

*Castorina* v. *Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107 (E.D.N.Y. 2011)................... 9, 13

*Chanayil v. Gulati*, 169 F.3d 168 (2d Cir. 1999) ...................................................... 19

*Chivalry Film Prods.* v. *NBC Universal, Inc.*, No. 05 Civ. 5627, 2007 WL 4190793
 (S.D.N.Y. Nov. 27, 2007) ........................................................................... 25

*Coafcredit, S.A. v. Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229 (2d Cir. 1999) ................ 19

*Colavito* v. *N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 827 N.Y.S.2d 96 (2006)........... 21, 22

*Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ......................................... 13

*Crigger* v. *Fahnestock & Co.*, 443 F.3d 230 (2d Cir. 2006)................................................... 21, 24

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) .................................... 16

*DiTocco* v. *Riordan*, ---F. Supp. 2d. ---, No. 10 Civ. 4186, 2011 WL 4373943
    (S.D.N.Y. Sept. 20, 2011) ......................................................................... 11, 13

*Eurycleia Partners, LP* v. *Seward & Kissel, LLP*, 12 N.Y.3d 553, 883 N.Y.S.2d 147
    (2009) ....................................................................................................... 21

*Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009) ........................... 17

*Fogerty* v. *Fantasy, Inc*, 510 U.S. 517 (1994) ............................................................. 24

*Gaste* v. *Kaiserman*, 863 F.2d 1061 (2d Cir. 1988) ...................................................... 10

*Gottwald* v. *Jones*, No. 11 Civ. 1432, 2011 WL 4344038 (S.D.N.Y. Sept. 12, 2011) ........... 10, 13

*Gross* v. *Radice*, No. 07-CV-3620, 2009 WL 749906 (E.D.N.Y. Mar. 16, 2009) ...................... 21

*Harper & Row Publishers, Inc.* v. *Nation Enters.*, 723 F.2d 195 (2d Cir. 1983),
    *rev'd on other grounds*, 471 U.S. 359 (1985) ...................................................... 22

*Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 153 F. 3d 82 (2d Cir. 1998) ................. 8

*Jorgensen* v. *Epic/Sony Records*, 351 F.3d 46 (2d Cir. 2003) ............................................. 10

*LaChapelle* v. *Fenty*, ---F. Supp. 2d. ---, No. 11 Civ. 945, 2011 WL 2947007
    (S.D.N.Y. July 20, 2011) ............................................................................ 11, 23

*Majorica, S.A. v. Majorca Int'l, Ltd.*, 687 F. Supp. 92 (S.D.N.Y. 1988) .................................. 15

*Mallery* v. *NBC Universal, Inc.*, No. 07 Civ 2250, 2008 WL 719218
    (S.D.N.Y. Mar. 18, 2008) ............................................................................ 24

*Mandarin Trading Ltd.* v. *Wildenstein*, 16 N.Y.3d 173, 919 N.Y.S.2d 465 (2011) .................... 23

*Marmelstein* v. *Kehillat New Hempstead*, 11 N.Y.3d 15, 862 N.Y.S.2d 311 (2008) ................... 20

*Master Sound Int'l, Inc.* v. *Polygram Latino U.S.*, No. 98 Civ. 8468, 1999 WL 269958
    (S.D.N.Y. May 4, 1999) ............................................................................... 8

*Miller* v. *Holtzbrinck Publishers, L.L.C.*, 377 Fed. App'x 72 (2d Cir. 2010) ............................. 22

*Mills* v. *Polar Molecular Corp.*, 12 F. 3d 1170 (2d Cir. 1993) ............................................... 21

*Mirvish* v. *Mott*, 75 A.D.3d 269, 901 N.Y.S.2d 603 (1st Dep't 2010) ..................................... 22

*Nat'l Basketball Ass'n, Inc.* v. *Motorola, Inc.*, 105 F.3d 841 (2d Cir.1997) ............................. 18

*Peter F. Gaito Architecture, LLC* (*Gaito*) v. *Simone Dev. Corp.*, 602 F.3d 57
(2d Cir. 2010) .......................................................................................................... *passim*

*Port Dock & Stone Corp.* v. *Oldcastle Northeast, Inc.*, 507 F. 3d. 117 (2d Cir. 2007) ................ 6

*Porto* v. *Guirgis*, 659 F. Supp. 2d 597 (S.D.N.Y. 2009) ........................................................ 24, 25

*Reece* v. *Mark Ecko Unltd.*, No. 10 Civ. 02901, 2011 WL 4112071
(S.D.N.Y. Aug. 19, 2011) ............................................................... 6, 10, 13, 15

*Rodriguez* v. *Heidi Klum Co.*, No. 05 Civ. 10218, 2008 WL 4449416
(S.D.N.Y. Sept. 30, 2008) ............................................................... 9, 10, 14

*Roquette Am., Inc. v. Alymum N.V.*, No. 03 Civ. 0434, 2004 WL 1488384
(S.D.N.Y. July 4, 2004) ................................................................................ 15

*Rut* v. *Young Adult Inst., Inc.*, 74 A.D.3d 776, 901 N.Y.S.2d 715 (2d Dep't 2010) ................... 20

*Sadhu Singh Hamdad Trust* v. *Ajit Newspaper Advertising*, 503 F. Supp. 2d 577
(E.D.N.Y. 2007) ....................................................................................... 7, 8

*Silverstein* v. *Penguin Putnam, Inc.*, 522 F. Supp. 2d 579 (S.D.N.Y. 2007) .............................. 16

*Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126
(2d Cir. 2004) ............................................................................................. 16

*Softel, Inc. v. Dragon Medical & Scientific Commc'ns, Inc.*, 118 F.3d 955 (2d Cir. 1997) ......... 17

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ................................ 19

*Stiles* v. *HarperCollins Publishers LLC*, ---F. Supp. 2d.---, No. 10 Civ. 2605,
2011 WL 3426673 (S.D.N.Y. Aug. 5, 2011) ................................................. 15

*Sylmark Holdings Ltd. v. Silicone Zone Int'l Ltd.*, 5 Misc. 3d 285, 783 N.Y.S. 2d 758
(N.Y. Sup. Ct. 2004) ................................................................................... 17

*Thayil* v. *Cowell*, No. 10-3200-CV-S-RED, 2011 WL 281047 (W.D. Mo. Jan. 25, 2011) ......... 25

*Thome* v. *Alexander & Louisa Calder Found.*, 70 A.D.3d 88, 890 N.Y.S.2d 16
(1st Dep't 2009) ......................................................................................... 24

*Tisi* v. *Patrick*, 97 F. Supp. 2d 539 (S.D.N.Y. 2000) ................................................................ 10

*TPTCC NY, Inc. v. Radiation Therapy Servs., Inc.*, 784 F. Supp. 2d 485 (S.D.N.Y. 2011) ......... 17

*United States* v. *Morrison*, 529 U.S. 598 (2000) ...................................................................... 20

*Warner Bros. Inc.* v. *Am. Broad Cos.*, 720 F.2d 231 (2d Cir. 1983) ............................................. 14

*Yurman Design, Inc.* v. *PAJ, Inc.*, 262 F.3d 101 (2d Cir. 2001).................................................... 11

*Zachariou* v. *Manios*, 50 A.D.3d 257, 854 N.Y.S.2d 694 (1st Dep't 2008)................................. 24

**<u>Statutes</u>**

15 U.S.C. § 1125.................................................................................................................... 16

15 U.S.C. § 1126.................................................................................................................... 15

17 U.S.C § 102................................................................................................................... 8, 22

17 U.S.C. § 101...................................................................................................................... 7

17 U.S.C. § 301...................................................................................................................... 18

17 U.S.C. § 411...................................................................................................................... 7

17 U.S.C. § 505...................................................................................................................... 24

18 U.S.C. § 1961.................................................................................................................... 19

**<u>Other Authorities</u>**

Restatement of Torts § 757 .................................................................................................... 17

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6)........................................................................................................... 5

Fed. R. Evid. 201 .................................................................................................................... 13

Defendant NBC Universal ("NBCU")[1] respectfully submits this memorandum of law in support of its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for costs and attorneys' fees pursuant to 17 U.S.C. § 505.

## INTRODUCTION

Plaintiff Paul Thayil ("Thayil") by way of this action seeks over $11 million in damages from a collection of media defendants that he alleges are responsible in some way for the development, production or broadcast of the following television shows: American Idol, Dancing With The Stars, So You Think You Can Dance and America's Got Talent. Notwithstanding the fact that the four television shows differ dramatically from one another, Plaintiff contends that each of the shows is "stolen" from two concepts identified in his "Marketing Plan" as "Musicflow" and "ShyDancer." Plaintiff's claims are objectively unreasonable.

As an initial matter, Plaintiff has not demonstrated he has a valid copyright or is deserving of copyright or trade secret protection. The idea of a music and dance performance and competition, which is the core and extent of his Marketing Plan, is a basic staple of reality television programming. It is not original, creative, or a protectible expression. His contention that he is nonetheless entitled to damages because the shows employ this general idea as well appears rooted in a belief that he "considered his intellectual product to be a trade secret and copyrighted." Moreover, he has offered no facts to credibly suggest that NBCU was aware of his Marketing Plan, let alone copied it to create the NBC show America's Got Talent. He alleges only that in 1997 he provided his Marketing Plan to entities in London and Australia – entities that are not owned, controlled by or otherwise related to NBCU – and leaves open the gaping and unanswerable question as to how this Marketing Plan somehow became the blueprint for

---

[1] NBC Universal, Inc. is now known as NBCUniversal Media LLC.

America's Got Talent, which premiered nearly a decade later in June 2006.

The larger problem, however, is that Plaintiff's Marketing Plan in no way resembles America's Got Talent or the other three television shows. What Plaintiff terms his Marketing Plan is most aptly described as an invitation to artists, performers, and investors to participate in a music and art showcase. At best, the only similarity between the television shows and the vague and loose concepts contained in Plaintiff's Marketing Plan is the idea of a talent competition and performance. Plaintiff is not entitled to a monopoly on this idea.

In addition to a copyright claim, Plaintiff makes a host of other state and federal claims against NBCU. As with his copyright claim, however, he has not made out a single element of these other claims. The Complaint, unsupported in either fact or law, should be dismissed with prejudice. Given the objective unreasonableness of Plaintiff's claims, particularly in light of the fact that he was put on judicial notice that there are "serious issues" with his ability to state a viable cause of action, an award of cost and attorneys' fees against Plaintiff is warranted.

## FACTUAL BACKGROUND

Plaintiff alleges he is the "creator and owner of a certain intellectual property" in the form of a "Marketing Plan." (Compl. ¶ 12.) Plaintiff contends his Marketing Plan was both a trade secret and copyrighted. (*Id.*)

The Marketing Plan is an eight-page document that appears to be a solicitation for sponsorship and participation in two projects called "Musicflow" and "ShyDancer." (Compl., Ex. A.) Musicflow is described in the Marketing Plan as "the linking of 7 major international cities, and stages, for musicians and artists (print) to be able to demonstrate their talents. The cities involved are New York, London, Chicago, Los Angeles, New Delhi, Singapore and Melbourne. Musicians will travel to each of these cities and their stages for a major concert."

(*Id.*)  The Marketing Plan goes on to describe the promotion strategy for Musicflow to include "large quantities of glossy car stickers" and "[c]ars carrying large flags with the words "www.musicflow.net."  (*Id.*)  Aside from sponsorship information, a list of individuals who are presumably involved with the project, and examples of benefits that will be provided to performers (such as a sightseeing tour and travel insurance), there are virtually no other specifics in the Marketing Plan about the Musicflow concept.  (*Id.*)

ShyDancer is described in the Marketing Plan as a concept "open for all keen shydancers, people who love to dance but are shy in this world."  (*Id.*)  Its aim is to encourage participants to "dance in the most private room in [their] home[s] (example Bedroom or Kitchen)" to "a selection of top dance music."  (*Id.*)  The dances would be filmed by a Musicflow production team.  (*Id.*)  The Marketing Plan contemplates that tapes of the dancers would go "into a pool…for a half hour TV show" and that the top ten tapes would be sold in one New York and one London HMV store.  (*Id.*)  The Plan further promised that a participant would share in the "profits" if his or her dance "hit[] the charts," although how a dance or dance tape could hit the charts or earn a profit as a result is unstated.  (*Id.*)  These details are the sum total of information provided in the Marketing Plan about ShyDancer.  (*Id.*)

Notwithstanding that the first page of the Marketing Plan is dated June 13, 2000 (*id.*), Plaintiff alleges that the Defendants received the Marketing Plan in 1997.  (Compl. ¶ 16.)  Specifically, Plaintiff claims he provided his Marketing Plan to Herald-Sun Newspapers in Melbourne, Australia in February 1997 and that Herald-Sun passed along the document to SONY Music in Melbourne.  (*Id.*)  He also alleges he provided the document to EMI Music London in April 1997.  (*Id.*)  Plaintiff does not allege that he provided the Marketing Plan to NBCU, that the entities he allegedly gave the plan to in turn gave it to NBCU, or allege any

connection or relationship whatsoever between NBCU and the entities that allegedly received the Plan.

Plaintiff does allege, however, that the Defendants used the ideas in his Marketing Plan to develop, produce and broadcast the television shows American Idol, Dancing With The Stars, So You Think You Can Dance and America's Got Talent. The aspects of the plan that Defendants allegedly improperly used are:

- Defendant Cowell traveled to the United States to seek out investors for the shows
- Defendant Cowell chose judges for the shows
- A center stage in New York
- Defendants invited musicians to participate in the shows
- Defendants "link[ed]" with other major companies
- Defendants encouraged musicians to travel between cities
- Defendants encouraged show participants "to reach the top"
- Defendants chose music for musicians to perform
- The primary purpose for the shows is to discover new talent

(Compl. ¶ 19.)

The Complaint includes a variety of theories of relief embedded in seven specific counts. Under a liberal reading, Plaintiff can be assumed to be asserting clams for copyright infringement, Lanham Act violations, failure to attribute, misappropriation of trade secrets, RICO, equal protection, breach of fiduciary duty, fraud, conversion, unjust enrichment and civil conspiracy. He seeks a temporary and permanent injunction and compensatory and punitive damages totaling $11.6 million.

For the reasons set forth below, Plaintiff has failed to state a claim as a matter of law

under any of these theories, and his Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

## I. THE COMPLAINT DOES NOT COMPLY WITH FED. R. CIV. P. 8(A) AND SHOULD BE DISMISSED PURSUANT TO FED. R. CIV. P. 12(B)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal if a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)); *see also, e.g., Canal+ Image UK Ltd.* v. *Lutvak* (*Canal*), 773 F. Supp. 2d 419, 426 (S.D.N.Y. 2011). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. When a "complaint pleads facts that are 'merely consistent with'" liability, however, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* Rather, a plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc.* v. *Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Legal conclusions couched as factual allegations will not do. *Twombly*, 550 U.S. at 555. Although a court may construe a pro se plaintiff's pleadings liberally, the plaintiff is still required to comply with the relevant rules of procedural and substantive law outlined above. *Bisson* v. *Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d Cir. Nov. 20, 2008); *see also Alexander* v. *Murdoch*, No. 10 Civ. 5613, 2011 WL 2802899, at *3 (S.D.N.Y. May 27, 2011) ("Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.").

The Complaint, which does not comply with the requirements of Rule 8(a) of the Federal Rules of Civil Procedure, falls woefully short of meeting these minimum pleading standards. It is replete with generalized claims about the conduct of "the Defendants," a group which includes a number of unrelated media entities. The Complaint makes no effort to distinguish what any particular Defendant is alleged to have done or to analyze the Marketing Plan against each of the allegedly infringing shows – shows which are broadcast by three different television networks. The allegations are not "enough to give the defendant[s] fair notice of what the claim is and the grounds upon which it rests," *Port Dock & Stone Corp.* v. *Oldcastle Northeast, Inc.*, 507 F. 3d. 117 (2d Cir. 2007) (citing *Twombly*, 127 S. Ct. at 1966), and do not state any claim entitling Plaintiff to relief. Accordingly, the Complaint should be dismissed.[2]

## II. PLAINTIFF HAS NOT PLED ANY OF THE REQUIRED ELEMENTS OF A COPYRIGHT INFRINGEMENT CLAIM

To state a claim for copyright infringement, a plaintiff must demonstrate: (1) ownership of a valid copyright; (2) the defendant has actually copied the plaintiff's work; and (3) the copying was illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work. *E.g.*, *Peter F. Gaito Architecture, LLC* (*Gaito*) v. *Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010); *Reece* v. *Mark Ecko Unltd.*, No. 10 Civ. 02901, 2011 WL 4112071 (S.D.N.Y. Aug. 19, 2011). Construing the Complaint as generously as possible, Plaintiff has failed to properly allege a single element of this claim.

### A. Plaintiff Has Failed To Plead Ownership Of A Valid Copyright

1.  Plaintiff has not established the requisite copyright registration.

Plaintiff's claim initially fails because he has failed to plead ownership of a valid

---

[2] For the same reasons, Plaintiff cannot demonstrate his entitlement to a preliminary or permanent injunction.

copyright. Under Section 411(a) of the Copyright Act, no suit for copyright infringement of a United States Work may be brought until the work has been registered with the United States Copyright Office. 17 U.S.C. § 411(a). In relevant part, a work is a United States work if it is unpublished and authored by a domiciliary or habitual resident of the United States. *Id.* § 101. A work is published if it was distributed to the public by sale or other transfer of ownership. *Id.*

Plaintiff's allegations establish that the Marketing Plan is a United States work. He concedes as much, admitting that the Marketing Plan was "created in the United States" as well as Australia. (Compl. ¶ 12.) Moreover, he alleges that the Marketing Plan is a "trade secret" and that it was intended to be "kept secret [and] confidential." (*Id.*) The plan, therefore, could not have been distributed for public display or use and, as a result, is unpublished. Plaintiff also identifies himself as the creator of the Marketing Plan (*id.*) and a resident of Arkansas (*id.* ¶ 2). Because the Marketing Plan is unpublished and its author is a domiciliary of the United States, the Marketing Plan is a "United States Work." 17 U.S.C. § 101. Given that it is a United States Work, Plaintiff was required to register the Marketing Plan with the Copyright Office before bringing this infringement action. 17 U.S.C. § 411(a); *see also Sadhu Singh Hamdad Trust* v. *Ajit Newspaper Advertising*, 503 F. Supp. 2d 577, 584 (E.D.N.Y. 2007). As he has not done so, his infringement claim should be dismissed.

Plaintiff does allege that the Marketing Plan was copyrighted in Australia, in what appears to be an attempt to evade the copyright registration requirement. (Compl. ¶ 22.) Assuming *arguendo* that Plaintiff did "register his copyworks in Australia" and his work qualified as a foreign work, he still fails to sufficiently allege a valid copyright. To state a claim, Plaintiff must identify the Australian copyright registration information to establish ownership of a valid copyright under Australian law. *Master Sound Int'l, Inc.* v. *Polygram Latino U.S.*, No. 98

Civ. 8468, 1999 WL 269958, at *2 (S.D.N.Y. May 4, 1999) ("[I]n order to state a claim [plaintiff] must identify…their individual registration information to establish ownership of a valid copyright under Mexican law.").

2. The Marketing Plan is not deserving of U.S. copyright protection.

Amending to correct this registration defect would be futile. Plaintiff is not entitled to broader copyright protection by virtue of having an Australian copyright than he would be if he had registered his work in the United States. *See Itar-Tass Russian News Agency* v. *Russian Kurier, Inc.*, 153 F. 3d 82, 89 (2d Cir. 1998); *Bridgeman Art Library, Ltd.* v. *Corel Corp.*, 36 F. Supp. 2d 191, 195 (S.D.N.Y. 1999). United States law determines whether or not Plaintiff's work is subject to protection and whether he has established copyright infringement. *Sadhu*, 503 F. Supp. 2d at 584 (citing *Itar-Tass*, 153 F. 3d at 98). Thus, "[t]he scope of the material protected is defined by United States law," *id*. at 587, and is limited by the fundamental tenent of United States copyright doctrine that "ideas, concepts, and processes are not protected from copying," *Attia* v. *Soc'y of N.Y. Hosp.*, 201 F.3d 50, 54 (2d Cir. 1999); *see also* 17 U.S.C § 102(b). To be subject to copyright protection, a work or element thereof must possess at least some minimal degree of creativity. *See Sadhu*, 503 F. Supp 2d at 588; *see also* 17 U.S.C § 102(a). Courts therefore are not required to enforce copyrights, foreign or domestic, that do not satisfy the originality requirement set forth in the Copyright Act at Section 102(a). *Sadhu*, 503 F. Supp. 2d at 585 n. 10; *Bridgeman Art Library, Ltd.*, 36 F. Supp. 2d at 195.

In short, Plaintiff cannot own an enforceable copyright in the "basic concept" of an amateur talent show competition, "even though the value of an unscripted program may lie almost entirely in that idea." *Castorina* v. *Spike Cable Networks, Inc.*, 784 F. Supp. 2d 107, 111 (E.D.N.Y. 2011). Nor can he claim copyright protection (as he attempts to do) over the generic

8

elements of his Marketing Plan that are inherently functional to that idea, such as a panel of judges, the geographic setting, the number of contestants or performing on stage. *Rodriguez* v. *Heidi Klum Co*., No. 05 Civ. 10218, 2008 WL 4449416, at \*5 (S.D.N.Y. Sept. 30, 2008) ("The use of a panel of judges composed of fashion industry experts, a design workroom with sewing machines, a specific number of contestants, professional models, hairstylists, make-up artists, weekly episodes and the setting of New York (among other enumerated similarities) all necessarily flow from the uncopyrightable idea of a fashion design reality show."); *Castorina*, 784 F. Supp. 2d at 112 ("The treatment's choices in selecting, coordinating and arranging stock elements are largely inherently functional to the idea of a sports reality show, not 'original' creative expressions of any particular idea."). Plaintiff has not even coordinated or arranged these allegedly similar stock elements in a creative or non-functional way. *Id.* Stripped of these elements, there is little, if anything, copyrightable in the Marketing Plan.

### B. Plaintiff Has Failed To Plead NBCU Copied His Work

Even if Plaintiff had established he owned a valid copyright, he has not adequately pled that NBCU copied his work. His infringement claim should be dismissed for this reason as well. *See*, *e.g.*, *Gaito*, 602 F.3d at 63 ("[T]o establish a claim of copyright infringement, a plaintiff must demonstrate…the defendant has actually copied the plaintiff's work.") (internal citation omitted).

Actual copying may be established either by direct evidence of copying or by indirect evidence, which includes access to the copyrighted work and "probative" similarities between the two works. *Gottwald* v. *Jones*, No. 11 Civ. 1432, 2011 WL 4344038, at \*3 (S.D.N.Y. Sept. 12, 2011); *Reece*, 2011 WL 4112071 at \*6. Proof of access requires a showing "that an alleged infringer had a 'reasonable possibility'-not simply a 'bare possibility'-of [seeing] the prior work;

access cannot be based on mere 'speculation or conjecture.'" *Jorgensen* v. *Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Gaste* v. *Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988)). It is the plaintiff's burden to present "significant, affirmative and probative evidence to support a claim of access." *Rodriguez*, 2008 WL 4449416 at *3; *Tisi* v. *Patrick*, 97 F. Supp. 2d 539, 547 (S.D.N.Y. 2000).

Here, Plaintiff has not set forth a single fact to establish that NBCU had access to his Marketing Plan or knew anything at all about Plaintiff or his Marketing Plan before he filed this suit. He alleges only that he provided his Marketing Plan to EMI Music in London and Herald-Sun Newspapers in Melbourne, which in turn allegedly gave the document to SONY Music in Melbourne. (Compl. at ¶ 16.) He does not allege that he provided the Plan to NBCU, that the entities he allegedly gave the Plan to in turn gave it to NBCU, or allege any connection or relationship whatsoever between NBCU and these entities. Plaintiff does not even offer a suggestion, however speculative, as to how the Marketing Plan would have made its way to NBCU. Plaintiff's allegations, devoid of any facts suggesting NBCU had access to his work, do not "state a claim for relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.

### C. Plaintiff Has Failed To Plead Facts Showing Substantial Similarity Between His Marketing Plan And America's Got Talent

Plaintiff's copyright infringement claim must be dismissed for yet another, incurable reason: He cannot demonstrate the requisite substantial similarity between his Marketing Plan and America's Got Talent.[3]

The test for substantial similarity between two works is "whether an 'ordinary observer,

---

[3] Plaintiff has not specifically pled that his claims against NBCU relate to America's Got Talent (or tied any of the four allegedly infringing shows to a particular defendant). America's Got Talent is the only one of the four shows that is broadcast by NBCU, and as such, is the focus of this motion. That being said, the deficiencies in the Complaint discussed above should compel dismissal with respect to all of the allegedly infringing shows.

unless he set out to detect the disparities, would be disposed to overlook them and regard [the] aesthetic appeal as the same.'" *Gaito*, 602 F.3d at 66 (quoting *Yurman Design, Inc.* v. *PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)); *see also*, *e.g.*, *Canal+*, 773 F. Supp. 2d at 428. Application of the ordinary observer test asks whether "an average lay observer would recognize the alleged copy as having been appropriated from copyrighted work." *Gaito*, 602 F.3d at 66 (internal citation omitted). When analyzing works with both protectible and unprotectible elements, the court "must attempt to extract the unprotectible elements from [] consideration and ask whether the unprotectible elements, standing alone, are substantially similar." *Id.*; *see also Canal+*, 773 F. Supp. 2d at 428. Copyright infringement requires substantial similarity between *copyrightable* elements of the allegedly infringing work and infringed works. *See Canal+*, 773 F. Supp. 2d at 440. The "focus must be on the similarity of the expression of an idea or fact, not on the similarity of the facts, ideas or concepts themselves." *LaChapelle* v. *Fenty*, --- F. Supp. 2d. ---, No. 11 Civ. 945, 2011 WL 2947007, at *2 (S.D.N.Y. July 20, 2011) (Scheindlin, J.) (internal citation and quotation omitted). That being said, the substantial similarity analysis is "principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringing work" as instructed by "good eyes and common sense." *Gaito*, 602 F.3d at 66 (internal citation and quotation omitted); *see also DiTocco* v. *Riordan*, --- F. Supp. 2d. ---, No. 10 Civ. 4186, 2011 WL 4373943, at *14 (S.D.N.Y. Sept. 20, 2011); *Alexander*, 2011 WL 2802899 at *5.

Here, no average lay observer would recognize America's Got Talent as resembling, let alone appropriated from the Marketing Plan. The Marketing Plan vaguely describes two concepts, "Musicflow" and "ShyDancer."

Musicflow is described in the Plan as comprised of the following elements:

- "[T]he linking of seven major international cities, and stages, for musicians and artists (print)." (Compl., Ex. A.)

- The musicians travel to these cities to perform at a major concert, (*id.*), although it is unspecified whether the musicians will travel to and perform in more than one city.

- The musicians will have the opportunity to place their CDs in designated HMV stores, (*id.*), although the Plan does not discuss the criteria by which the musicians will be selected for this opportunity.

- The Print artists will have the opportunity to display their artwork at the entrances of the concert halls. (*Id.*)

- "Glossy car stickers" and "cars carrying large flags" will be used to promote the concept. (*Id.*)

In turn, the ShyDancer concept is described as comprised of the following elements:

- Participants are encouraged to "dance in the most private room" of their homes, such as the bedroom or kitchen, to a selection of "top dance music." (*Id.*)

- The dancers will be filmed by MusicFlow cameras, (*id.*), presumably in the participant's bedroom or other private area of his or her home.

- An unspecified number of those tapes will go into a pool to be selected for a half-hour television program. (*Id.*) The Plan does not discuss how many tapes will be selected for the television show or who will be doing the selecting. The "top ten" tapes will then be placed for sale at New York and London HMV stores. Again, the Plan does not include how the top ten tapes will be selected.

In contrast, America's Got Talent is a televised talent competition that features singers, dancers, magicians, comedians, contortionists, jugglers, and impressionists.[4] The performers

---

[4] Although the Plaintiff did not include copies or descriptions of the allegedly infringing television shows in the Complaint, the Court may consider the shows on a motion to dismiss. Where, as here, "the works are integral to the complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss because the court has before it all that is necessary in order to make such an evaluation." *See DiTocco*, 2011 WL 4373943 at *9 (quoting *Gaito*, 602 F.3d at 64). This is true even if the allegedly infringing works are not attached to or described in the complaint because the complaint is deemed to include documents that the plaintiff relied upon in bringing suit. *See Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991); *see also Gottwald*, 2011 WL 4344038 at *2 (considering allegedly infringing recordings that were not attached as they were "[t]he very crux of the allegations"); *Canal+*, 773 F. Supp. 2d at 427 (considering

first compete in untelevised rounds in cities across the United States. The chosen then compete on stage, in a televised audition in front of three celebrity judges and a live studio audience. During the performance, the judges may terminate an act's performance early by pressing a red buzzer, which lights up a red "X" on the stage. If an act receives three "X"s, the performer is out of the competition. Alternatively, judges can signal approval of a performance. If the act receives at least two votes of approval from the judges, the competitor advances to the next round. Performers chosen to proceed to the next round compete once more in front of the judges for an opportunity to compete in front of a live television audience. During a succession of live elimination rounds, performers compete for both judge and audience votes. The ultimate winner receives a $1,000,000 prize. The number of acts competing in the live rounds has ranged from twenty to over forty in the several seasons the show has been on the air.

America's Got Talent bears no resemblance to the generalized concepts described in the Marketing Plan. Indeed, MusicFlow does not appear to be a talent competition and ShyDancer does not appear to involve live performances. Thus, there is no similarity in even the base ideas and concepts, let alone the expression of those ideas. The only possible similarity between ShyDancer and America's Got Talent is the unprotectible "idea of a reality television show where people compete for a prize – a basic staple of modern television programming." *Canal+*,

---

allegedly infringing movie and musical that were not attached to or described in the complaint as they were "integral" to the claim); *Reece*, 2011 WL 4112071 at *8 (considering allegedly infringing artwork that was not attached to the complaint "in the context of [a] 12(b)(6) motion, as the issue of these designs' similarity is integral" to the pleadings.). In assessing substantial similarity, New York district courts have relied on both the public record and counsel's descriptions of the works. *See DiTocco*, 2011 WL 4373943 at *10 (reviewing allegedly infringing books and movies); *Castorina*, 784 F. Supp. 2d at 111 n. 2 (relying on parties' descriptions of the allegedly infringing television shows); *see also* Fed. R. Evid. 201(c) (permitting judicial notice). Video highlights of America's Got Talent episodes are located at http://www.nbc.com/americas-got-talent/video/. NBC is also able to submit DVDs of the program should the Court deem it necessary or helpful.

773 F. Supp. 2d at 439 (quoting *Rodriguez*, 2008 WL 4449416 at *4 n. 11). Not one of the similarities Plaintiff alleges (such as selecting judges, performing on a center stage in New York and encouraging musicians to reach the top) is a copyrightable expression of an original idea. *See Rodriguez*, 2008 WL 4449416 at *5 ("The use of a panel of judges composed of fashion industry experts, a design workroom with sewing machines, a specific number of contestants, professional models, hairstylists, make-up artists, weekly episodes and the setting of New York (among other enumerated similarities) all necessarily flow from the uncopyrightable idea of a fashion design reality show."). Moreover, a number of the "aspects from Plaintiff's Marketing Plan [allegedly] in use by Defendants" are nowhere to be found in the Marketing Plan. For example, the Marketing Plan makes no mention of musicians stating "on-camera that [they are] going to Hollywood," the judge selection process, or of a "top twelve." (Compl. ¶ 19.)

In this Circuit, it is appropriate and permissible for a court to make a determination as to substantial similarity on a Rule 12(b)(6) motion as a matter of law when, as here, "'the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury…could find that the two works are substantially similar.'" *Gaito*, 602 F.3d at 63 (quoting *Warner Bros. Inc.* v. *Am. Broad Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)); *see also Reece*, 2011 WL 4112071 at *13 (recommending dismissal given significant differences between works); *Stiles* v. *HarperCollins Publishers LLC*, --- F. Supp. 2d. ---, No. 10 Civ. 2605, 2011 WL 3426673, at *1 (S.D.N.Y. Aug. 5, 2011) ("Because the Court finds that defendants' works are not substantially similar to the protectible expression in plaintiffs' works, the Court grants defendants' motion to dismiss."); *Canal+*, 773 F. Supp. 2d at 441 (dismissing because no reasonable jury would find works had substantially similar total concept and feel). Dismissal is appropriate here. Granting every benefit Plaintiff is entitled to under Federal Rule of Civil

Procedure 12(b)(6), the dictates of good eyes and common sense lead inexorably to the conclusion that there is no substantial similarity between any aspect of the Marketing Plan and America's Got Talent, much less between copyrightable elements of the Plan.

## III. PLAINTIFF HAS NOT PLED THE REQUISITE ELEMENTS OF A LANHAM ACT OR FAILURE TO ATTRIBUTE CLAIM

Count VI of the Complaint alleges violations of 15 U.S.C. § 1126 (the Lanham Act), but does not specify the subsection under which this claim is brought. To the extent he relies on 15 U.S.C. § 1126 (b) and/or (h), there is no claim. Read together, these subsections merely entitle "foreign nationals of countries that are party to certain international conventions with the United States the right to 'effective protection against unfair competition.'" *Roquette Am., Inc.* v. *Alymum N.V.*, No. 03 Civ. 0434, 2004 WL 1488384, at *5 (S.D.N.Y. July 4, 2004) (quoting 15 U.S.C. § 1126(h)); *see also Majorica, S.A.* v. *Majorca Int'l, Ltd.*, 687 F. Supp. 92, 96 (S.D.N.Y. 1988). For alleged acts of unfair competition committed in the United States, the Lanham Act, not foreign law, supplies the relevant substantive law. *Majorica,* 687 F. Supp. at 96. Affording the Complaint a liberal reading, the claim is therefore properly analyzed, and rejected, under Section 1125(a) of the Lanham Act, which generally prohibits unfair competition, including "reverse palming off" of goods or services.[5] *See* 15 U.S.C. § 1125(a); *Societe Des Hotels Meridien* v. *LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d Cir. 2004).

Plaintiff alleges that "[t]he Defendants, without any authorization or permission from Plaintiff, then converted the trade secret intellectual and copyrighted property contained in Plaintiff's Marketing Plan for their own use and implementation . . . ." (Compl. ¶ 16.) All these allegations amount to, at most, is an alleged failure of proper attribution. This alleged failure is

---

[5] The Lanham Act also applies to trademark rights. However, the Complaint contains no allegations that plausibly suggest that the Plaintiff is asserting any rights based in trademark.

not actionable under the Lanham Act. *See Dastar Corp.* v. *Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003) (recognizing the Lanham Act does not proscribe misrepresentations about "the author of any idea, concept, or communication embodied in those goods"); *Silverstein* v. *Penguin Putnam, Inc.*, 522 F. Supp. 2d 579, 601 (S.D.N.Y. 2007) (quoting 15 U.S.C. § 1125(a)(1)(A)) ("[A]n author may not claim that the producer of the tangible product, by reproducing the author's ideas without proper attribution, has committed an actionable 'false designation of origin.'"). Moreover, Plaintiff's Lanham Act allegations merely restate the allegations of his copyright claims, fail to show "the requisite affirmative action of false claiming originality beyond that implicit in any allegedly false copyright," and are barred as a result. *See Armstrong* v. *Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 633 (S.D.N.Y. 2000).

Finally, there are no allegations of consumer confusion as required for a claim of "reverse palming off" under the Lanham Act. *See Societe Des Hotels Meridien*, 380 F.3d at 131 ("reverse palming off claim requires allegations…that the false designation of origin was likely to cause consumer confusion"). Nor can Plaintiff credibly make such an allegation, as Plaintiff's concepts were never broadcast or otherwise presented to the public. Accordingly, the Plaintiff's claim for violation of the Lanham Act should be dismissed.

## IV.   PLAINTIFF HAS NOT PLED THE REQUISITE ELEMENTS OF A TRADE SECRET CLAIM

To state a claim for misappropriation of a trade secret under New York law, a plaintiff must show "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley Transport Malmo AB* v. *Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (internal citation and quotation omitted); *Sylmark Holdings Ltd.* v. *Silicone Zone Int'l Ltd.*, 5 Misc. 3d 285, 297, 783 N.Y.S. 2d 758, 770-71 (N.Y. Sup. Ct. 2004). New York has adopted

the Restatement of Torts definition, which provides that a trade secret is "'any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Ashland Mgmt. Inc.* v. *Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 918 (1993) (quoting Restatement of Torts § 757)); *see also Softel, Inc.* v. *Dragon Medical & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997). In defining a trade secret, New York courts consider:

> (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and its competitors; (5) the amount of effort or money expended by [the business] in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Ashland Management*, 82 N.Y.2d at 407, 604 N.Y.S.2d at 918 (quoting Restatement of Torts § 757, cmt b). Notably, "information is not 'secret,' as a matter of law, if secrecy is necessarily lost when the service or product is placed on the open market, even if it was intended to remain secret before that time." *TPTCC NY, Inc.* v. *Radiation Therapy Servs., Inc.*, 784 F. Supp. 2d 485, 502 (S.D.N.Y. 2011).

The Marketing Plan cannot be a trade secret. The general ideas in the Marketing Plan are unoriginal and are employed commonly in the industry and in the public domain. Plaintiff also has failed to set forth any facts in support of the argument that it is a trade secret. There are no indications of the amount of time, money, or effort Plaintiff expended in developing the Marketing Plan, nor of its economic value to NBCU or to the other defendants. Moreover, there are no allegations that Plaintiff made any efforts to keep the Marketing Plan a secret or to otherwise protect its secrecy. In fact, Plaintiff's allegations indicate that he openly sent the

Marketing Plan to various industry professionals, *including a newspaper*. (Compl. ¶ 16; Ex. A p. 1-5.) This absence of secrecy is fatal to the existence of a valid trade secret.

There are also no allegations to support that NBCU breached any agreement with or duty to Plaintiff. Indeed, the Complaint fails to allege that Plaintiff ever had any interaction with NBCU with regard to the Marketing Plan, much less any facts to support the inference that NBCU owed Plaintiff any kind of duty. In this absence of a valid trade secret or an actionable duty, Plaintiff's claim for misappropriation of a trade secret must be dismissed.

## V. PLAINTIFF'S REMAINING CLAIMS SHOULD BE DISMISSED

Plaintiff also has attempted to make a number of other substantive claims, which are set forth below as identified from NBCU's reading of the Complaint. He has set forth no facts or any allegations at all in support of the elements of these additional claims that would render his claims qualitatively different from his copyright claim. His tort claims, merely relabeled copyright infringement claims, are thus pre-empted by the Copyright Act. *See* 17 U.S.C. § 301; *Briarpatch Ltd.* v. *Phoenix Pictures*, *Inc.*, 373 F.3d 296, 305-06 (2d Cir. 2004); *Nat'l Basketball Ass'n*, *Inc.* v. *Motorola*, *Inc.*, 105 F.3d 841, 851 (2d Cir. 1997); *Canal+*, 773 F. Supp. 2d at 441. For this and the reasons that follow, his remaining claims fail as a matter of law.

### A. RICO

Count V of the Complaint alleges a RICO violation. To state a claim for violation of RICO, "a plaintiff must show '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Coafcredit, S.A.* v. *Windsor Plumbing Supply Co. Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (internal citation omitted). In addition, a plaintiff "must establish a 'pattern of racketeering activity." *Spool* v. *World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal quotation marks omitted). "[A] pattern of racketeering activity requires at

least two acts of racketeering activity." *Id.* (quoting 18 U.S.C. § 1961(5) and *Cofacredit, S.A.*, 187 F.3d at 242). These acts "must be among the various criminal offenses listed in § 1961(1)" and "must be 'related, and [either] amount to or pose a threat of continuing criminal activity." *Id.* Plaintiff alleges mail and wire fraud (18 U.S.C. §§ 1341 and 1342) as the predicate acts for his RICO claim. (Compl. ¶ 31.) To establish mail and wire fraud, a plaintiff must allege "(1) the existence of a scheme to defraud, (2) the defendant's knowing participation in the scheme, and (3) the use of wire [and] mail . . . in interstate commerce in furtherance of the scheme." *Chanayil* v. *Gulati*, 169 F.3d 168, 170-71 (2d Cir. 1999).

Here, the Complaint is entirely devoid of any factual allegations that give rise to a RICO claim. It contains no factual allegations that NBCU used the mails or wires. Moreover, Plaintiff has failed to allege any facts to create the inference that NBCU directed any pattern of activity, whether benign or criminal, toward him. Plaintiff also has not filed a RICO Statement setting forth the specific facts he is relying upon to assert his RICO claim as required by Section V(C) of the Court's Individual Rules and Procedures. Thus, Plaintiff's RICO claim should be dismissed.

## B. Equal Protection

Count IV alleges the Defendants deprived Plaintiff of "his equal protection of the laws" and "right to free exercise of rights." (Compl. at ¶¶ 29-30.) Equal protection claims, however, may only be brought against government entities. *See United States* v. *Morrison*, 529 U.S. 598 (2000). Plaintiff has not alleged that NBCU is a state actor, and nor could he. For this reason, this claim should be dismissed.

## C. Breach Of Fiduciary Duty

The elements of a cause of action for breach of fiduciary duty under New York law are: (1) the existence of a fiduciary relationship; (2) misconduct by the defendant; and (3) damages

caused by the defendant's misconduct. *Burry* v. *Madison Park Owner LLC*, 84 A.D.3d 699, 699-700, 924 N.Y.S.2d 77, 78 (1st Dep't 2011); *Rut* v. *Young Adult Inst., Inc.*, 74 A.D.3d 776, 777, 901 N.Y.S.2d 715, 717 (2d Dep't 2010). A "fiduciary relationship 'exists between two parties when one of them is under a duty to act or give advice for the benefit of the other upon matters within the scope of the relation[ship].'" *Marmelstein* v. *Kehillat New Hempstead*, 11 N.Y.3d 15, 21-22, 862 N.Y.S.2d 311, 314 (2008) (internal citation omitted). Two essential elements of a fiduciary relationship are "de facto control and dominance." *Id.* Plaintiff has made no attempt to establish the existence of a fiduciary relationship between himself and NBCU. Indeed, he has set forth no facts establishing a minimal relationship or contact with NBCU, let alone a relationship in which NBC exercised de facto control and dominance over him. His claim for breach of fiduciary duty should be dismissed for this reason.

Moreover, this claim is time-barred. The statute of limitations for a breach of fiduciary duty claim is three years and begins to run when plaintiff knew or should have known of the facts underlying the claim. *Gross* v. *Radice*, No. 07-CV-3620, 2009 WL 749906, at *7 (E.D.N.Y. Mar. 16, 2009). America's Got Talent first premiered on primetime national television in June 2006 and is in its sixth season. For this claim to be timely, Plaintiff should have brought it by approximately June 2009. Even affording the Plaintiff the benefit of the doubt as to when he first learned of the show's broadcast, a two-year delay is objectively unreasonable.

### D.     Fraud

The elements of fraud under New York law are: (1) material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (5) damages as a result. *See Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 234 (2d

Cir. 2006); *Eurycleia Partners, LP* v. *Seward & Kissel, LLP*, 12 N.Y.3d 553, 559, 883 N.Y.S.2d 147, 151 (2009).  To comply with Federal Rule of Civil Procedure 9(b), a claim for fraud must (a) specify the statements that the plaintiff contends were fraudulent; (b) identify the speaker; (c) state where and when the statements were made; and (d) explain why the statements were fraudulent.  *Mills* v. *Polar Molecular Corp.*, 12 F. 3d 1170, 1175 (2d Cir. 1993).  Plaintiff has failed to set forth any facts entitling him to relief on this claim.  He has set forth no facts establishing the content of the NBCU statements he contends were fraudulent, the time, place or speaker of those statements, or why the statements were fraudulent.  This fatal deficiency naturally follows from Plaintiff's inability to establish any contact with NBCU.

**E.      Conversion**

To establish a prima facie case for conversion under New York law, a plaintiff must show that the defendant, intentionally and without authorization, assumed or exercised control over the plaintiff's property, thereby interfering with the plaintiff's right of possession.  *Colavito* v. *N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50, 827 N.Y.S.2d 96, 100 (2006).  The key elements of conversion are "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights."  *Id.* (internal citation omitted).  Plaintiff's conversion claim necessarily fails because he has not and cannot show that the defendants have interfered with his right to possess property. Initially, he cannot reasonably claim that Defendants have interfered with his right to possess the physical, tangible document that is his Marketing Plan.  To the extent he is claiming a possessory right in the *ideas* in his Marketing Plan, such as the concept of a talent competition or performance, those ideas are not his to own.  *See* 17 U.S.C. § 102(b).  Moreover, the defendants have not interfered with Plaintiff's right of possession – he is free to do what he wishes with the

Marketing Plan, including pursuing his own show.

This inability to demonstrate that defendants have interfered with a possessory right highlights that his conversion claim is merely a repackaged copyright claim and therefore is preempted by the Copyright Act. *Miller* v. *Holtzbrinck Publishers, L.L.C.*, 377 Fed. App'x 72, 73-74 (2d Cir. 2010). Plaintiff alleges that the defendants "without any authorization or permission from Plaintiff [] converted the trade secret intellectual and copyrighted property...for their own use." (Compl. ¶ 17.) Where, as here, unauthorized publication is the gravaman of Plaintiff's claim, the right Plaintiff seeks to protect is coextensive with an exclusive right safeguarded by the Copyright Act and is preempted. *Miller*, 377 Fed. App'x at 73-74 (citing *Harper & Row Publishers, Inc.* v. *Nation Enters.*, 723 F.2d 195, 201 (2d Cir. 1983), *rev'd on other grounds*, 471 U.S. 359 (1985)).

In any event, this claim is time-barred. The statue of limitations for conversion is three years and runs as of the date the property was allegedly converted, and not from the date of discovery. *Mirvish* v. *Mott*, 75 A.D.3d 269, 275, 901 N.Y.S.2d 603, 608 (1st Dep't 2010). Plaintiff alleges the Defendants came into possession of his Marketing Plan in 1997, (Compl. at ¶ 16.), fourteen years ago. Even under a generous analysis that assumes the alleged conversion occurred in June 2006 (when America's Got Talent premiered), Plaintiff's claim is still at least two years overdue.

### F. Unjust Enrichment

The Court of Appeals has definitively ruled that New York unjust enrichment claims are fundamentally similar to copyright infringement claims and thus are preempted by the Copyright Act. *Briarpatch*, 373 F.3d at 306-07 (holding that unjust enrichment claim is preempted because an extra element of enrichment is insufficient to render claim qualitatively different from

copyright infringement claim); *see also LaChapelle*, 2011 WL 2947007 at *7 (holding state law cause of action for unjust enrichment is preempted insofar as it applies to copyrighted subject matter).  As Plaintiff's unjust enrichment claims are grounded solely on defendants' alleged copying of his Marketing Plan, they are preempted and should be dismissed.

What is more, to state a claim for unjust enrichment, a plaintiff must pled facts to demonstrate "a relationship between the parties, or at least an awareness by [the defendant] of [the plaintiff's] existence."  *Mandarin Trading Ltd*. v. *Wildenstein*, 16 N.Y.3d 173, 182, 919 N.Y.S.2d 465, 471-72 (2011).  There is no claim where the pleadings fail to indicate a relationship between the parties that would have caused reliance or inducement.  *Id*.  As discussed in Section II.B *supra*, the Complaint is utterly devoid of facts suggesting a relationship between the Plaintiff and NBCU or that NBCU was at all aware of Plaintiff's existence.  "Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal."  *Id*.

### G.    Conspiracy

New York does not recognize an independent cause of action for conspiracy.  *Thome* v. *Alexander & Louisa Calder Found*., 70 A.D.3d 88, 110, 890 N.Y.S.2d 16, 31 (1st Dep't 2009); *Zachariou* v. *Manios*, 50 A.D.3d 257, 257, 854 N.Y.S.2d 694, 695 (1st Dep't 2008).  There is no claim for civil conspiracy where the underlying tort has not been adequately pled.  *Crigger* v. *Fahnestock & Co.*, 443 F.3d 230, 237 (2d Cir. 2006).  As Plaintiff's tort claims fail as matter of law, so too does his civil conspiracy claim.  *See Thome*, 70 A.D.3d at 110, 890 N.Y.S.2d at 31.

## VI.    DEFENDANTS ARE ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS

As set forth above, Plaintiff's claims are objectively unreasonable.  Accordingly, an award of attorneys' fees and costs against plaintiff is warranted.

A court may award costs to any party and attorneys' fee to a prevailing party pursuant to 17 U.S.C. § 505. In assessing whether such an award is warranted, the court should consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Porto* v. *Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (quoting *Fogerty* v. *Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). Even when there is no bad faith, an award of attorneys' fees is appropriate under Section 505 when the claim is objectively unreasonable. *Id.* Where, as here, the plaintiff cannot point to a single similarity between protectible elements of his work and that of the defendant, the claim of copyright infringement is objectively unreasonable. *Id.*; *see also Mallery* v. *NBC Universal, Inc.*, No. 07 Civ. 2250, 2008 WL 719218, at *1 (S.D.N.Y. Mar. 18, 2008) (awarding costs and fees where "nearly every instance of alleged similarity…relates to unprotectible ideas rather than protectible expression" and the total concept and feel were "profoundly different"); *Chivalry Film Prods.* v. *NBC Universal, Inc.*, No. 05 Civ. 5627, 2007 WL 4190793, at *1-2 (S.D.N.Y. Nov. 27, 2007) (awarding fees and costs where alleged similarities "involved the most trivial and generic incidents"). Plaintiff's pro se status does not preclude an award against him. *Id.* at *4.

As discussed in considerable detail *supra*, Plaintiff's claims are objectively unreasonable. He cannot identify a single similarity that is deserving of copyright protection between his Marketing Plan and America's Got Talent or any of the other allegedly infringing television shows – the shows are scarcely similar with respect to the unprotectible elements in his Marketing Plan and are profoundly different in total concept and feel from the Plan and from each other. Moreover, he has utterly failed to allege facts demonstrating he owns a valid copyright, or that NBCU had access to or was aware of the Plan's existence.

An award of costs and fees is especially warranted where, as here, Plaintiff was warned before the action was filed that he had no colorable copyright infringement claim. *Porto*, 659 F. Supp. 2d at 617. Plaintiff brought a near identical action in the Western District of Missouri against the defendants named here with the exception of Fox Corporation and NBCU. *See Thayil* v. *Cowell*, No. 10-3200-CV-S-RED, 2011 WL 281047 (W.D. Mo. Jan. 25, 2011). The defendants moved to dismiss the complaint in that matter as well. *Id.* In dismissing the complaint on venue grounds, the court declined to assign the case to another venue, in part due to the recognition that "there are serious issues raised as to whether Plaintiff will ever be able to state a viable cause of action against these defendants." *Id.* at *2. Plaintiff was unquestionably on notice that his claims lacked merit. An award of costs and fees will advance "the need for deterrence against objectively unreasonable copyright claims" in general, *Chivalry*, 2007 WL 4190793 at *3, and the need to deter Plaintiff from pursing meritless litigation against these defendants in particular.

## CONCLUSION

For the foregoing reasons, NBCU respectfully requests that its motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for costs and attorneys' fees pursuant to 17 U.S.C. § 505 be granted.

Dated: November 3, 2011
   New York, New York

NBCUniversal Media LLC

By: /s/ Chelley E. Talbert
  Chelley E. Talbert (CT-7208)
30 Rockefeller Plaza
New York, New York 10112-0002
chelley.talbert@nbcuni.com
(212) 664-2527

*Attorneys for Defendant NBC Universal*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on November 3, 2011, a true and correct copy of the foregoing document was filed electronically with the Clerk of Court via the CM/ECF system, which will send notification of such filing to the following:

Pryor Cashman LLP
Ilene Susan Farkas
ifarkas@pryorcashman.com
Maryaneh Mona Simonian
msimonian@pryorchasman.com
Donald S. Zakarin
dzakarin@pryorcashman.com
*Attorneys for Defendant EMI Entertainment World Inc.*

SNR Denton US LLP
Rebecca Hughes Parker
rebeccahughes.parkersnrdenton.com
*Attorneys for Defendants Fox Corporation and Sony Music Entertainment*

The undersigned further certifies that a true and correct copy of the foregoing document was served via Federal Express to the plaintiff, who is a non CM/ECF participant at the address listed below.

Paul Thayil, *Plaintiff Pro Se*
 Musicflow
1 Oak Forest Place
Maumelle, AR 72113

*/s/ Chelley E. Talbert*
Attorney for Defendant NBC Universal

1