UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/2/12__

PAUL THAYIL,

           **Plaintiff,**

    - against -

FOX CORPORATION, SIMON
COWELL, EMI MUSIC PUBLISHING
COMPANY, SONY MUSIC
ENTERTAINMENT, SIMON FULLER,
19 ENTERTAINMENT, CKX, INC.,
NIGEL LYTHGOE, and NBC
UNIVERSAL,

           **Defendants.**

------------------------------------------------- X

**OPINION AND ORDER**

**11 Civ. 4791 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Paul Thayil, proceeding pro se, brings this action against Fox

Corporation, Simon Cowell, EMI Music Publishing Company, Sony Music

Entertainment, Simon Fuller, 19 Entertainment, CKX, Inc., Nigel Lythgoe and

NBC Universal, seeking injunctive relief, damages, and punitive damages, alleging

that defendants' acts constitute: (1) copyright infringement; (2) misappropriation of

trade secrets; (3) unfair competition; (4) fraud; (5) conspiracy to defraud; (6)

1

violations of the Racketeer Influenced and Corrupt Organization Act ("RICO")[1];

(7) violations of the Lanham Act[2]; (8) breach of fiduciary duty; (9) conversion; and

(10) unjust enrichment.  Defendants now move to dismiss all of Thayil's claims,

with prejudice,  pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to

state a claim.  For the reasons discussed herein, defendants' motion is granted.

## II.    BACKGROUND[3]

Thayil, who currently lives in Arkansas, is the creator and owner of a

marketing plan, which he created and reduced to writing sometime prior to

---

[1]    *See* 18 U.S.C. §§ 1961 *et seq.*

[2]    *See* 17 U.S.C. § 1126.

[3]    These facts are drawn from Thayil's Complaint filed July 12, 2011
("Compl.").  In addition, since Thayil is proceeding pro se, the factual allegations
made in Thayil's verified Response to Defendants' Memorandum of Law in
Support of Their Consolidated Motion to Dismiss the Complaint, and the exhibits
annexed thereto ("Thayil Opp.") will be treated as part of the Complaint.  *See Gill
v. Mooney,* 824 F.2d 192, 195 (2d Cir. 1987) (considering pro se plaintiff's
affidavit in opposition to defendant's motion to dismiss in reviewing district
court's dismissal of claim).

As discussed below, many of the allegations in the Complaint and the
Thayil Opposition are not entitled to the presumption of truth because they are no
more than conclusory statements and/or threadbare recitals of causes of action.  *See
Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Ashcroft v. Iqbal*,
556 U.S. 662, —, 129 S.Ct. 1937, 1950 (2009)). The well pled factual allegations,
however, will be taken as true for the purposes of this motion. *See Iqbal*, 129 S.Ct.
at 1943.

2

February of 1997[4] (the "Marketing Plan").[5]

The Marketing Plan consists of correspondence outlining Thayil's concept for two projects, "Musicflow" and "ShyDancer."[6]  The "Musicflow" project is essentially a multi-city tour of musicians and artists who would be featured at a concert in each of the seven or eight cities in which they performed.[7] "ShyDancer" is a concept for a television show that would air selected tapes of participants dancing in their own households, free of inhibition.[8]

Thayil has alleged that the Marketing Plan was a trade secret.[9] Sometime in February of 1997, Thayil handed his Marketing Plan to the Herald

---

[4]     Thayil implies that he finished the entire Marketing Plan prior to or during February, 1997, which was the time he allegedly distributed copies to some of the defendants.  *See* Compl. ¶¶ 2, 12.  This inference is undercut, however, by the fact that some parts of the Marketing Plan were copyrighted in 2000.  *See* Marketing Plan, Ex. A to Compl., at 1 and 6.

[5]     *See* Compl. ¶¶ 2, 12 and 16.  *See also* Marketing Plan.

[6]     Marketing Plan.

[7]     *Id.*

[8]     *Id.*

[9]     *See* Compl. ¶ 12.

3

Sun Newspaper[10] located in Melbourne, Australia (the "Herald").[11]  On April 10, 1997, Thayil also hand delivered a copy of the Marketing Plan to EMI Music London.[12]  The Marketing Plan was given to the Herald and EMI Music London "with the aim of possible partnership."[13]  Cameron Adams, presumably an employee of the Herald, sent the Marketing Plan to Sony Music, located in Melbourne, Australia.[14]  Several weeks thereafter, Sony returned the Marketing Plan to Thayil and informed him that it was not interested.[15]

After receiving a copy either "directly, indirectly or inadvertently," Thayil alleges that defendants took the "ideas, data, information, direction and strategy outlined" in the Marketing Plan.[16]  Defendants used these parts of the Marketing Plan to develop and produce "American Idol," "Dancing With The Stars," "So You Think You Can Dance" and "America's Got Talent" (the

---

[10]  The Herald Sun Newspaper in Melbourne, Australia, is an affiliate of Fox.  *See id.* ¶ 16.

[11]  *See id.*

[12]  *See id.*

[13]  *Id.*

[14]  *See id.*

[15]  *See id.*

[16]  *Id.* ¶ 18.

"Shows").[17]

Specifically, Thayil alleges that defendants used the following aspects from the Marketing Plan: (1) meetings with investors to generate funds and partnerships for the Shows; (2) choosing judges; (3) inviting musicians to take part in the Shows; (4) working with other major companies across the United States; (5) after the audition, having contestants say that they were "going to Hollywood" or "not going to Hollywood"; (6) encouraging contestants to travel between cities; (7) encouraging contestants to reach the top group of competitors; (8) choosing music for performances on the Shows; and (9) using "American Idol" as a mechanism to discover new talent so that defendants could exploit and benefit from their record sales.[18]  Thayil also alleges that defendants misappropriated the essence of his "Musicflow" idea, which was "young amateur musicians [sic] to be given maximum exposure in major cities, all with the end result [sic] being able to market and sell their music and CD's."[19]

Thayil further alleges that defendants "entered into agreements to carry out the scheme of an enterprise through a pattern of racketeering activity to

---

[17]     *Id.*

[18]     *Id.* ¶ 19.

[19]     Thayil Opp. p. 7.

defraud [Thayil]."[20]  Thayil also alleges that defendants' pattern of racketeering activity consists of (1) engaging in mail fraud in violation of sections 1341 and 1343 of Title 18 of the United States Code by devising a scheme to defraud to obtain money or other property by using the United States mail; and (2) violating sections 2314 and 2315 of Title 18 of the United States Code by willfully causing the transport of and receipt of stolen goods.[21]

## III.    LEGAL STANDARD

### A.    Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor."[22]  The court then evaluates the sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Iqbal.*[23]  *First,* a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

---

[20]    Compl. ¶ 31.

[21]    *See id.*

[22]    *Wilson v. Merrill Lynch & Co., Inc.*, — F.3d —, 2011 WL 5515958, at *6 (2d Cir. Nov. 14, 2011) (quotation marks omitted).

[23]    129 S. Ct. at 1950.

entitled to the assumption of truth.'"[24]   "Threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements, do not suffice" to

withstand a motion to dismiss.[25]  *Second*, "[w]hen there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief."[26]  To survive a Rule 12(b)(6)

motion to dismiss, the allegations in the complaint must meet a standard of

"plausibility."[27]  A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."[28]  Plausibility "is not akin to a probability

requirement," rather, plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."[29]

---

[24]      *Hayden*, 594 F.3d at 161 (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010), *cert. denied on other grounds*, — U.S. —, 131 S. Ct. 824 (Dec. 13, 2010).

[25]      *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[26]      *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010), *cert. granted*, No. 10-1491, 565 U.S. — , 2011 WL 4905479 (Oct. 17, 2011).

[27]      *Twombly*, 550 U.S. at 564.

[28]      *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[29]      *Id.* (quotation marks omitted).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[30]  However, the court may also consider a document that is not incorporated by reference, "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[31]  A court may also take judicial notice of "the status of other lawsuits in other courts and the substance of papers filed in those actions."[32]

Where the plaintiff is proceeding pro se, his or her pleadings must be considered under a more lenient standard than that accorded to "formal pleadings drafted by lawyers,"[33] and his or her pleadings must be "interpret[ed] . . . to raise

---

[30]     *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[31]      *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).  *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[32]     *Schenk v. Citibank/Citigroup/Citicorp*, No. 10 Civ. 5056, 2010 WL 5094360, at *2 (S.D.N.Y. Dec. 9, 2010) (citing *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003)).

[33]     *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). *Accord Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("Because [plaintiff] is a pro se litigant, we read his supporting papers liberally.").

the strongest arguments they suggest."[34]  These same principles apply to briefs and

opposition papers submitted by pro se litigants.[35]   Notwithstanding liberal

treatment of their pleadings, pro se status does not relieve a plaintiff from

satisfying the pleading requirements prescribed by the Federal Rules of Civil

Procedure.[36]

### B.    Pleading Requirements

#### 1.    Rule 8

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and

plain statement of the claim showing that the pleader is entitled to relief.'"[37]  To

survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must

meet the standard of plausibility, as discussed above.[38]

#### 2.    Rule 9(b)

A complaint alleging fraud must satisfy Rule 9(b)'s requirement that

---

[34]     *Burgos*, 14 F.3d at 790.

[35]     *See Ortiz v. McBride*, 323 F.3d 191, 194 (2d Cir. 2003); *Burgos*, 14 F.3d at 790.

[36]     *See Praseuth v. Werbe,* 99 F.3d 402 (2d Cir. 1995) ("Failure to comply with Rule 8(a) may result in dismissal of a complaint, even if the pleader is proceeding pro se.") (citing *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir. 1972)).

[37]     *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[38]     *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 564.

"the circumstances constituting fraud . . . be stated with particularity."[39] "This

pleading constraint serves to provide a defendant with fair notice of a plaintiff's

claim, safeguard his reputation from improvident charges of wrongdoing, and

protect him against strike suits."[40] To comply with the requirements of Rule 9(b), a

plaintiff must: "(1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent."[41] "Allegations that are

conclusory or unsupported by factual assertions are insufficient."[42]

## IV.    APPLICABLE LAW

### A.    Copyright Infringement

To establish infringement, two elements must be proven: (1)

ownership of a valid copyright, and (2) copying of constituent elements of the

work that are original.[43]   However, copyright does not protect ideas.  It protects

---

[39]    Fed. R. Civ. P. 9(b).  *Accord ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

[40]    *ATSI*, 493 F.3d at 99 (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).

[41]    *Rombach*, 355 F.3d at 170 (quotation marks omitted).  *Accord ATSI*, 493 F.3d at 99 (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

[42]    *ATSI*, 493 F.3d at 99.

[43]    *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991).  The Second Circuit has further defined the second element of copyright

only the author's "particularized expression of the idea."[44]

## B.    Misappropriation of Trade Secrets[45]

Unlike copyright protection, the trade secrets doctrine protects "the discovery of ideas, processes, and systems," which are explicitly precluded from coverage under copyright law.[46]  Trade secret claims[47] are grounded in the defendant's breach "of a duty of trust or confidence to the plaintiff through improper disclosure of confidential material."[48]

---

infringement as requiring (1) that defendant copied from plaintiff's copyrighted work; and (2) that the copying constituted an improper or unlawful appropriation. *See Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946).

[44]    *Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004).  *Accord Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir. 1930) (a playwright's copyright was not violated by a movie script on similar themes).

[45]    *Computer Assoc. Intern., Inc. v. Altai, Inc.,* 982 F.2d 693, 717 (2d Cir. 1992) (following the "extra element" test unfair competition and misappropriation claims grounded solely in the copying of a plaintiff's protected expression are preempted by section 301).

[46]    *Id.*

[47]    Defendants suggest that New York law controls all of the state law claims.  As Thayil raises no objection to this assumption, I will proceed accordingly.  *See Krumme v. WestPoint Stevens, Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (implied consent is sufficient to establish choice of law).

[48]    *Altai,* 982 F.2d at 717 ("Defendant's breach of duty is the gravamen of such trade secret claims, and supplies the 'extra element' that qualitatively distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying.").

11

## C.    Unfair Competition[49]

New York courts have noted that there are an "incalculable variety" of
illegal practices falling within the parameters of an unfair competition claim.[50]  It is
a "broad and flexible doctrine"[51] meant to prevent person(s) from "reaping the
fruits of [another person's] efforts and expenditure"[52] or "misappropriati[ng] for
the commercial advantage of one person . . . a benefit or 'property' right belonging
to another."[53]  An unfair competition claim involving misappropriation is
concerned with (1) the taking and use of the plaintiff's property; and (2) competing
against the plaintiff's own use of the same property.[54]

---

[49]    To the extent Thayil's Complaint could be construed as asserting a
claim for unfair competition under section 1126(b) and (h) of Title 15 of the
United States Code, these sections do not create a separate cause of action for
unfair competition under the Lanham Act.  Such a claim is properly construed as
being brought under section 1125 or under state unfair competition laws.  *See
Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005).

[50]    *Roy Export Co. Establishment of Vaduz, Liechtenstein v. Columbia
Broadcasting Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (citing *Ronson Art
Metal Works, Inc. v. Gibson Lighter Mfg. Co.*, 3 A.D.2d 227, 230-31 (1st Dep't
1957)).

[51]    *Roy*, 672 F.2d at 1105 (internal citations omitted).

[52]    *International News Serv. v. Associated Press*, 248 U.S. 215, 241
(1918).

[53]    *Roy*, 672 F.2d at 1105 (internal citations omitted).

[54]    *See id.*

### D.    Common Law Fraud and Conspiracy to Defraud

"The elements of fraud under New York law are: '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.'"[55]  To state a proper claim for conspiracy to defraud a plaintiff must allege: "(1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."[56]

### E.    RICO

A plaintiff claiming a civil RICO violation must allege each of the claim's elements, including "(1) conduct, (2) of an enterprise, (3) through a

---

[55]    *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).

[56]    *Fezzani v. Bear, Stearns & Co. Inc.*, 592 F. Supp. 2d 410, 429 (S.D.N.Y. 2008).

pattern[57] (4) of racketeering activity."[58]  In considering civil RICO claims, a court

must be mindful of the devastating effect such claims may have on defendants.[59]

The statute of limitations for civil RICO claims is four years.[60] Additionally,

because an agreement to commit predicate acts is at the heart of a civil RICO

claim, "a RICO civil conspiracy complaint, at the very least, must allege

specifically such an agreement."[61]

### F.    Breach of Fiduciary Duty

The elements of a claim for breach of a fiduciary obligation are: "[1]

the existence of a fiduciary duty; [2] a knowing breach of that duty; and [3]

---

[57]    A "pattern of racketeering activity" must be at least two acts of racketeering activity as defined by section 1 of Title 18 of the United States Code. *See* 18 U.S.C. § 1961(1) and (5).

[58]    *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). *See also* 18 U.S.C. § 1962.

[59]    *See Kirk v. Heppt*, No. 05 Civ. 9977, 2006 WL 689510, at *2 (S.D.N.Y. Mar. 20, 2006) ("Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.") (citations and quotation marks omitted).

[60]    *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987).

[61]    *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 25 (2d Cir. 1990).

14

damages resulting therefrom."[62]

### G.    Conversion

To adequately plead conversion plaintiff must allege: "(1) plaintiff had legal ownership or an immediate superior right of possession to specific identifiable personal property, and (2) defendant exercised unauthorized dominion over the property to the exclusion of the plaintiff's rights."[63]

### H.    Unjust Enrichment

Under New York law, to claim unjust enrichment a plaintiff must allege that: "(1) the other party was enriched, (2) at that [plaintiff's] expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'"[64]

### I.    Leave to Amend

Rule 15(a)(2) provides that other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written

---

[62]    *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).

[63]    *Aetna Cas. & Sur. Co. v. Glass*, 428 N.Y.S.2d 246, 247 (1st Dep't 1980).

[64]    *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (internal quotations omitted).

consent or with the court's leave."[65]  Although "[t]he Court should freely give

leave when justice so requires,"[66] it is "within the sound discretion of the district

court to grant or deny leave to amend."[67]  "When a motion to dismiss is granted,

the usual practice is to grant leave to amend the complaint."[68]  However, where a

plaintiff inadequately pleads a claim and cannot offer additional substantive

information to cure the deficient pleading, granting leave to replead is futile.[69]

## V.    DISCUSSION

Thayil fails to make factual assertions to support his generalized

accusations of defendants' wrongdoing.  The majority of the Complaint is filled

with conclusory allegations of wrongdoing and violation of various laws, which

are unsupported by factual assertions that would allow this Court to draw a

reasonable inference that defendants are liable for the alleged misconduct.  Thayil

has made the argument that many of the factual allegations will be revealed

through discovery.  Although plaintiff is not required to produce proof of his

---

[65]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[66]     Fed. R. Civ. P. 15(a)(2).

[67]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[68]     *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[69]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

allegations at the pleading stage, that does not relieve Thayil of the requirement that he state a facially plausible claim, which Thayil has not done.  Accordingly, and for the reasons set forth below, Thayil's Complaint is dismissed in its entirety with prejudice.

### A.    Ideas Are Not Protectable Under Copyright Law

Taking Thayil's factual allegations in connection with access[70] and copying as true, Thayil has failed to make factual allegations to support a finding that the elements of the Marketing Plan, which defendants allegedly copied, were in fact protected by copyright, or that the alleged copying by defendants amounted to an unlawful taking.

Thayil alleged that defendants used the "ideas" in the Marketing Plan.[71]  As discussed above, copyright does not protect ideas, only the expression of ideas.[72]  To the extent that Thayil's allegations seek redress for a taking of his

---

[70]    While Thayil has alleged access and copying by Fox and EMI, he fails to allege how the remainder of the defendants would have accessed the Marketing Plan.  Although, Thayil set forth facts in his Opposition suggesting some connections between the defendants, the time line of events is very unclear.  *See* Thayil Opp. at 5-7.  Notwithstanding the tenuous nature of the alleged connections, I need not reach the issue of access with respect to these defendants, because Thayil's copyright infringement claim must be dismissed for other reasons.

[71]    Compl. ¶ 18.

[72]    *See Mattel*, 365 F.3d at 135-36.

ideas Thayil's claim must be dismissed.

Similarly, Thayil's assertion that defendants unlawfully took the data, information, and strategy expressed in the Marketing Plan,[73] also fails as defendants' alleged copying does not amount to an improper or unlawful appropriation.  The elements that were allegedly misappropriated from the Marketing Plan, as set forth at length in the factual background above, were essentially generalized strategies or actions, and are too far removed from the expression to be entitled to protection.

The abstract actions Thayil claims were stolen, such as having meetings with investors and choosing judges, would reasonably be undertaken by any commercial venture seeking to create a competitive reality television program that features amateur performers.[74]  Assuming defendants copied the Marketing Plan, appropriating these generalized abstractions would not amount to an unlawful taking because the series of abstractions at issue here cannot be a protected expression.  Although the test for appropriation is not literal appropriation, abstract

---

[73]     *See* Compl. ¶ 18.

[74]     Thayil argues that he is not required to plead his case in further detail until he is allowed discovery on the issue of defendants' participation (*i.e.* access and copying).  *See* Thayil Opp. at 1-2.  However Thayil has failed to plead facts that would allow me to infer that defendants improperly appropriated protected elements of the Marketing Plan.

ideas are not protected.[75]  The intellectual property Thayil claims defendants misappropriated, is precisely the type of abstraction that is not protected because it is too far removed from the protected expression.  Additionally, Thayil claims defendants misappropriated two expressions from his Marketing Plan – "going to Hollywood" and "not going to Hollywood."[76]  However, those expressions are not in the Marketing Plan.[77]  As such Thayil's claim of copyright infringement is dismissed.

**B.     Thayil Has Failed to Allege Facts to Support His Contention that the Marketing Plan Was a Trade Secret**

Thayil has made conclusory allegation that at all times he "considered [the Marketing Plan] to be a trade secret," and that the Marketing Plan was provided to defendants as a trade secret or that defendants understood that the Marketing Plan was a trade secret.[78]  Given the conclusory nature of these allegations, without supporting factual allegations, these assertions are not entitled to a presumption of truth.[79]

---

[75]     *See Nichols*, 45 F.2d at 121.

[76]     Compl. ¶ 19(g).

[77]     *See* Marketing Plan.

[78]     Compl. ¶ 12.

[79]     *See Hayden*, 594 F.3d at 161.

Thayil failed to allege that he protected the Marketing Plan in a way that is consistent with the protection of a trade secret or that when the Marketing Plan was handed to the Herald or EMI Music London, that it was delivered with an expectation of confidentiality that was agreed to, or understood, by defendants.  By virtue of Thayil's failure to plead factual content that would allow the Court to draw an inference that the Marketing Plan was in fact treated as a trade secret or that there was any duty of trust or confidentiality between Thayil and defendants, both of which are necessary to state a claim for misappropriation of a trade secret, this claim also fails.

### C.      Thayil Has Failed to State a Claim for Unfair Competition

Thayil has also failed to adequately state a claim for unfair competition under New York law.[80]  Taking all of Thayil's allegations concerning the allegedly copied materials as true, the Complaint does not allege facts that would allow this Court to draw the inference that Thayil owned a property right or a commercial advantage in the Marketing Plan that was appropriated by defendants.  Thayil does not exclusively own a property right in the idea of

---

[80]      To the extent Thayil's mention of section 1126 of Title 15 of the United States Code, was an attempt to claim unfair competition under section 1125(a), such a claim also fails.  Thayil has not alleged ownership in a mark or trade dress that has been used by defendants nor has he asserted likelihood of confusion, both of which are required to state a claim under section 1125(a).  *See ITC Ltd., v. Punchgini, Inc.,* 482 F.3d 135, 154 (2d Cir. 2007).

exploiting amateur performers, nor does he have the exclusive right to benefit from meeting with investors to generate funds and partnerships.[81]  Again, these are the types of activity that any commercial venture seeking to create a competitive reality show would undertake.  Accordingly, Thayil's claim of unfair competition is dismissed.

### D.    The Claims of Fraud and Conspiracy to Defraud Must Be Dismissed

Thayil's claims of fraud and conspiracy to defraud are also dismissed as Thayil has failed to state these claims with particularity, as required by Rule 9(b).  To this end, Thayil has also failed to plead any of the required elements of fraud and conspiracy to defraud, namely, misrepresentation, material omission, inducement, reliance, an agreement, and an overt act in furtherance of that agreement.[82]  Accordingly, Thayil's claims of fraud and conspiracy to defraud are dismissed.

### E.    Thayil's RICO Claim Is Facially Implausible

Thayil's RICO claim is also dismissed as it is facially implausible. Although Thayil has alleged that "[d]efendants entered into agreements to carry

---

[81]    *Roy*, 672 F.2d at 1105 (unfair competition is concerned with "misappropriati[ng] for the commercial advantage of one person . . . a benefit or 'property' right belonging to another.") (internal quotations omitted).

[82]    *See Equifax*, 583 F.3d at 108; *Fezzani*, 592 F. Supp. 2d at 429.

out the scheme of an enterprise through a pattern of racketeering activity to defraud"[83] him, such a conclusory allegation is not entitled to a presumption of truth.  There are no factual allegations to support the contention that defendants entered into agreements, are employed with or associated with an enterprise, or for that matter that an enterprise even exists.  Moreover, the allegations of the two underlying acts of racketeering have also been pled as conclusory statements of violations of law, without any factual assertions to support the inference that defendants committed wrongdoing.

Thayil's RICO claim is not plausible.  These are precisely the type of threadbare recitations of the elements of a cause of action that cannot survive a motion to dismiss.  Accordingly, Thayil's RICO claim is also dismissed.

### F.     Breach of Fiduciary Duty, Unjust Enrichment and Conversion

Thayil's claims of breach of fiduciary duty, unjust enrichment and conversion are also dismissed.  Thayil has not alleged that a fiduciary duty exists between himself and defendants, nor has Thayil pled facts that would allow this Court to infer that a fiduciary relationship exists as a matter of law.  Additionally, Thayil has not made allegations to support an inference that defendants were enriched at his expense.  The aspects of the Marketing Plan that Thayil alleges

---

[83]     Compl. ¶ 31.

defendants took were not novel concepts that caused the success of the Shows or subsequent enrichment of defendants at Thayil's expense.  Accordingly, Thayil's claims of breach of fiduciary duty and unjust enrichment are dismissed.

Lastly, Thayil's claim of conversion is dismissed because Thayil has failed to allege that defendants receipt of the Marketing Plan was unauthorized, or that their possession of it at any time was to the exclusion of Thayil's rights.  To the contrary, Thayil avers that he gave the Herald and EMI the Marketing Plan.[84] Moreover, given that at least one of the defendants, Sony, sent it back, it is obvious that Thayil was not excluded from possession of the Marketing Plan.

### G.    Dismissal With Prejudice

Although leave to amend is typically granted, here it is beyond cavil that given the opportunity to amend, Thayil would not be able to cure the deficient pleading.[85]  Accordingly, granting leave to replead is futile, and Thayil's claims are dismissed with prejudice.

---

[84]    *See* Compl. ¶ 16.

[85]    This is especially true where Thayil has filed similar deficient pleadings in the United States District Court for the Western District of Missouri, against many of the defendants.  In his order dismissing Thayil's previous complaints against some of the defendants, the court noted that "there are serious issues raised as to whether Plaintiff will ever be able to state a viable cause of action against these defendants."  *Thayil v. Cowell*, No. 10 Civ. 3200, 2011 WL 281047, at *2 (W.D. Mo. Jan. 25, 2011).  In refiling the case here Thayil has failed to heed this warning.

## IV.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted.

The Clerk of the Court is directed to close this motion [Docket No. 47] and this

case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.


Dated:      New York, New York
            February 2, 2012

- Appearances -

**Plaintiff (Pro Se):**

Paul Thayil
1 Oak Forest Place
Maumelle, Arkansas 72113

**For Defendant EMI Entertainment World Inc.:**

Donald S. Zakarin, Esq.
Ilene S. Farkas, Esq.
M. Mona Simonian, Esq.
Pryor Cashman LLP
7 Times Square
New York, New York 10036
(212) 421-4100

**For Defendant NBC Universal**:

Chelley E. Talbert, Esq.
NBC Universal Media LLC
30 Rockefeller Plaza
New York, New York 10112
(212) 664-2527

**For Defendants Fox Broadcasting Corporation, Sony Music Entertainment,
19 Entertainment, Inc., CKX, Inc., Nigel Lythgoe, and Simon Cowell:**

Rebecca Hughes Parker, Esq.
SNR Denton US LLP
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700

Andrea Kimball, Esq.
Rebecca Stroder, Esq.
SNR Denton US LLP
4520 Main Street, Suite 1100

Kansas City, Missouri 64111
(816) 460-2400

**For Defendant Simon Fuller:**

Daniel N. Jocelyn, Esq.
Stephen J. Riccardulli, Esq.
Monica S. Asher, Esq.
McDermott Will & Emery LLP
340 Madison Avenue
New York, New York 10173
(212) 574-5400